# Wytheville

## JACOT V. GROSSMANN SEED AND SUPPLY CO., INC.

### June 12, 1913.

### Absent, Cardwell, J.

1. APPEAL AND ERROR—*Instructions—Sufficiently Instructed.*—Where the instructions given by the court are sufficient to inform the jury as to the law applicable to the facts of the case, it is unnecessary for this court to review the action of the trial court in rejecting other instructions tendered.

2. SALES—*Sale by Sample—Acceptance of Inferior Goods—Warranty—Waiver*—Upon an executory sale of goods by sample, with a warranty that the goods shall correspond with the sample, the acceptance of an inferior grade of goods after an opportunity for examination does not, as a matter of law, constitute a waiver of the inferior quality of the goods and a satisfaction of the seller's obligations, but the retention and use of the goods for a considerable length of time, without complaint, warrants a strong inference that the goods are either what the contract calls for, or that the buyer is satisfied to accept them instead of such goods, and for this reason it is important to give prompt notice of any defect which exists.

3. DAMAGES—*Delivery of Inferior Goods.*—Where goods of an inferior grade have been delivered to a buyer, the measure of his damages is the difference between the value of the goods as represented at the time and place of delivery, and the value at such time and place of the goods actually delivered.

4. WARRANTY—*Affirmation of Quality—Sales.*—Although there is no warranty of the germinating properties of seed offered for sale, yet if the affirmation is made that they are of the crop of the previous year for the purpose of influencing the buyer, as an affirmation of quality, and the affirmation is relied on by the buyer, and the evidence shows that seed of good quality of that year's crop are good, merchantable seed, then the fact that the seed had practically no germinating qualities strongly tends to prove that they were not of the crop of the previous year, and that there was a breach of the affirmation or warranty that they were of that year's growth, and the verdict of the jury so finding should not be set aside as contrary to the evidence.

Error to a judgment of the Hustings Court of the city of Petersburg in a proceeding by motion tor a judgment for money. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The following instructions were tendered by the plaintiff but were *refused.*

"1. The court instructs the jury that they must not consider in this case for any purpose any alleged statements as to the clover seed in question made by Werner prior to or at the time of the written bid for acceptance signed by Grossmann, and that none of these alleged statements are to be considered as part of the evidence in this case."

"2. The court instructs the jury that if they believe from the evidence that the 120 sacks of crimson clover seed were actually received by Grossmann during the latter part of January or first part of February, 1911, and that the said Grossmann did not, within a reasonable time after the receipt by him of said 120 bags of seed, inspect the same, then the said defendant accepted the seed and waived any defect, if any there was, in said seed, and the jury shall not consider as evidence in this case any of the statements made by witnesses as to the failure of the seed to sprout or germinate when sowed in the ground in July, 1911, or later, or as to any tests made in September, 1911, or later."

"3. The court instructs the jury that they must find for the plaintiff the amount claimed by him, unless they believe from the evidence that the said plaintiff gave to the said defendant, the Grossmann Seed and Supply Company, a warranty, either express or implied, as to the germination of the crimson clover seed sold by the said plaintiff to the said defendant, and unless they further believe that the seed so sold by the said plaintiff to the said defendant did not comply with the said warranty."

"4. The court instructs the jury that warranties are either express or implied. Any distinct affirmation of quality made by the vendor, or by his thereunto duly authorized agent, at the time of the sale, not as an expression of opinion or belief, but as an assurance to the purchaser of the truth of the fact affirmed, and an inducement to him to make the purchase, is, if accordingly received and relied on, and acted on by the purchaser, an express warranty. But no affirmation, however strong, will constitute a warranty unless it was so intended, and none of the statements alleged to have been made by Werner prior to or at the time of the signing of the bid for acceptance are to be considered as evidence in this case."

"5. The court instructs the jury that if they believe from the evidence that Werner gave to the defendant at the time of the sale any warranty as to the germination of the seed in question, still the plaintiff is not bound by such warranty unless the said Werner, as agent for the plaintiff, had authority to make such warranty. The court instructs the jury that the said Werner had no authority to warrant the germination of said seed, so as to make the plaintiff liable therefor, unless he had been expressly authorized by the plaintiff to make such warranty, or unless, by a custom or usage of the seed trade, it is usual and customary in selling crimson clover seed to warrant its germination."

"6. The court instructs the jury that the plaintiff cannot be held liable for the failure of the seed to germinate unless there was a warranty on the part of the plaintiff, as one of the terms of sale, that the seed would germinate, and further instructs the jury that the statements made by the plaintiff, after the sale was consummated by the acceptance by the plaintiff of the offer of the defendant, and contained in the letters of January 18, 19, and 28, 1911, do not constitute a warranty binding the plaintiff."

"7. The court instructs the jury that if they believe from

the evidence that the Grossmann Seed and Supply Company signed the written bid for acceptance introduced in evidence, and if they further believe that the plaintiff, by the telegram of September 16, and by the letter of September 17, accepted the offer made by said defendant, that this offer, telegram and letter contain every material term and circumstance of the contract, and these three papers constitute the entire contract, and the court further instructs the jury that there is not in the said contract between the plaintiff and the defendant any warranty as to the germination of the crimson clover seed sold."

"8. Where a specific article, such as crimson clover seed, sample "calm," of the 1910 crop, is ordered and furnished, the court instructs the jury that, although the defendant stated the purpose to which he intended to apply the seed, there is no implied warranty on the part of the plaintiff that it is suitable for the purpose, and he will not, in the absence of an express warranty, be held liable, however unfit and defective the seed may turn out to be."

"9. The court instructs the jury that if they believe from the evidence that the sale of the crimson clover seed in question here was a sale by sample, and if they further believe that the 120 bags of crimson clover seed came into the actual possession of the defendant on or about the 9th of February, 1911, then the court instructs the jury that it was the duty of the said defendant, then or within a reasonable time thereafter, to inspect the 120 bags of clover seed, in order to ascertain whether the bulk of the seed corresponded with the sample by which the seed were purchased by the defendant; and the court further instructs the jury that if they believe from the evidence that the defendant did not, within a reasonable time after the receipt by it of the 120 bags of clover seed in question, inspect the same, that the defendant cannot now complain of any alleged failure of the bulk of the seed to be equal in quality to the sample by which the seed were purchased."

"10. The court instructs the jury that if they believe from the evidence that the sale in this case was a sale by sample and that the 120 bags of crimson clover seed in question came into actual possession of the defendant on or before the 9th of February, 1911, then the court instructs the jury that it was the duty of the defendant, within a reasonable time, to inspect the said 120 bags, so as to determine whether the bulk of the seed corresponded with the sample by which the seed were purchased; and the court further instructs the jury that if the defendant, by such inspection, made within a reasonable time, ascertained that the bulk of the seed did not correspond with the sample by which the seed were purchased, then it was the duty of the defendant either to reject the seed for nonconformity with the sample or, within a reasonable time, to notify the plaintiff of the failure of the bulk of the seed to correspond with the sample, and that his failure to do either will estop him to claim any damage for any defect that may be found in the seed after the expiration of a reasonable time to make such examination."

"11. The court instructs the jury that if they believe from the evidence that 120 bags of crimson clover seed, of the 1910 crop and of the same grade as the sample exhibited to Grossmann by Werner, were weighed, set aside and marked in the Lackawanna Warehouse Company's storehouse in Jersey City, N. J., and the warehouse receipt exhibited in evidence sent to and received by the defendant, and the said clover seed delivered f. o. b. to the transportation company in New York, this was a delivery to said defendant of said clover seed, and the statute known as the Virginia seed law has no bearing on this case."

"12. If the seed in question were branded and shipped to Petersburg by the plaintiff at the request of the defendant, then the plaintiff was, as to such branding and shipment,

the agent of the defendant, and the branding and shipping were in contemplation of law, the acts of the defendant."

"13. The court instructs the jury that the evidence does not show that the business of the Grossmann Seed and Supply Company has been injured by the sale of the seed to it by the plaintiff."

"14. The court instructs the jury that under the act of Assembly of Virginia known as the Virginia Seed Law crimson clover seed which are ninety-eight per cent. pure may lawfully be labelled "Standard Seeds.""

"15. The court instructs the jury that if the defendant shall have in his exclusive possession evidence to sustain a certain fact, if the fact exists, and if he fails to produce such evidence, the presumption is that the fact does not exist, and the court instructs the jury that if the defendant claims that the 120 bags of clover seed when shipped into Virginia had on them tags marked "Standard Seed," and fails to produce before the jury either a tag or a bag so branded, this failure, unexplained, raises a presumption that the bags were not so branded, which presumption the defendant must overcome."

INSTRUCTIONS GIVEN BY THE COURT.

I. This is an action by the plaintiffs, Jacot & Mullen, to recover of the defendant, the Grossmann Seed and Supply Company, Inc., the sum of $1,700.00 with interest from September 11, 1911, due by negotiable note—it being claimed that said note was given for the balance of the purchase price on account of 120 sacks of crimson clover seed sold the defendant by the plaintiff in September, 1910.

The defendant seeks to defeat said recovery upon the ground that said seed were sold as the crop of 1910 and by sample, and it avers that said seed were not of the crop of 1910, or of the quality of the sample by which the sale

was made; but, on the contrary, were of an older crop, of an inferior quality, and sterile and utterly worthless, by reason of which the defendant has sustained great loss and damage to the amount of $3,000.42, and prays that the same be set off and allowed against the sum of money alleged to be due and payable to the plaintiff.

II. The court further instructs the jury that if they believe from the evidence that the defendant signed the written bid or offer to buy introduced in evidence and that the plaintiff by telegram of September 16th, and by letter of September 17, 1910, accepted said bid or offer, and a sample of the seed sold was, at the time of said bid, exhibited to the defendant by plaintiff's agent, as representing the kind and quality of seed offered, then said written bid, telegram, letter and sample constitute the contract of sale between the plaintiffs and the defendant, and no representation or recommendation made the defendant at the time by plaintiff's agent, can vary, take from or add to its force or effect.

III. The court further instructs the jury that the contract between the plaintiffs and defendant contains no warranty of the quality and germinating properties of the seed sold, except an implied warranty that they were of the kind and quality set out in the contract and as shown by the sample; and that they must not consider any evidence or statement of any witness as to the failure of said seed to sprout or germinate, except as evidence tending to show what was the quality or condition of the seed when delivered as compared with the quality of the seed sold with reference to the sample by which the sale was made.

IV. The court further instructs the jury that the letters of the plaintiffs to the defendant, of January 18, 19 and 28, 1911, do not constitute any warranty, and must not be considered in that light, but can only be considered by the jury as evidence tending to show what was the quality

of the goods the plaintiffs understood had been sold as shown by the sample.

V. The court further instructs the jury where a specific article, such as crimson clover seed, of the grade "calm," and of the crop of 1910, is sold and bought, there is no warranty, express or implied, that they are suitable for the purpose for which they are purchased, although the seller may have known the purpose to which the buyer intended to apply them; and, in the absence of an express warranty, the seller will not be held liable, however defective the seed may turn out to be.

VI. The court further instructs the jury that if seed are sold by description and by sample, no warranty of quality or fitness for a particular purpose is implied, except that when they are described as of a particular grade, and of a particular crop, a warranty that they are of such grade and crop is implied; and where there is a sale by sample, there is an implied warranty that the bulk of the seed is equal to the sample in kind and quality. A sale by description and sample carries with it an implied warranty that the seller shall deliver seed of the kind and quality of such description and sample.

VII. The court further instructs the jury that if they believe from the evidence that the seed sold the defendant in September, 1910, were, at the time they were weighed, set aside and marked in the Lackawanna Warehouse Company's Store-house in Jersey City, New Jersey, of the crop of 1910, and of the same grade and quality as the sample exhibited by plaintiff's agent to the defendant, then the jury should find for the plaintiffs and against the defendant.

VIII. The court further instructs the jury if they believe from the evidence that the seed so weighed, set aside and marked were not of the crop of 1910, but were older seed, and of an inferior grade and quality to the sample,

then the jury should find for the defendant and against the plaintiffs.

IX. The court further instructs the jury that if they find for the plaintiffs, the amount of their recovery should be the sum of $1,700.00 with interest from September 11, 1911.

If the jury find for the defendant, the measure of its damages is the difference in the value of the seed at the time of delivery in February, 1911, at Petersburg, if they had been of the kind and quality of the description and sample by which they were sold, and the value at such time and place of the seed actually delivered, but such amount cannot exceed $3,066.42, the sum claimed by the defendant's plea.

From the amount so ascertained by the jury must be deducted the sum of $1,700.00, the difference being the amount to which the defendant is entitled, if the jury should find for the defendant."

*Roper & Davis,* for the plaintiff in error.

*Wm. B. McIlwaine,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

William Jacot, trading as Jacot & Mullen, made a motion for judgment in the hustings court of the city of Petersburg against the Grossmann Seed and Supply Company, Inc., to which the defendant pleaded the general issue and four special pleas, in the first of which it is alleged that the defendant had purchased of the plaintiff a quantity of crimson clover seed, which the plaintiff undertook and promised the defendant should be good merchantable seed, which proved not to be true, and that the clover seed were sterile and utterly worthless, to the dam-

age of the defendant. The second plea sets out that the defendant bought of the plaintiff a quantity of standard crimson clover seed of the quality of a sample then and there exhibited by the plaintiff's agent, who undertook that the seed purchased should be of the quality of the sample then and there exhibited, and that by the breach of this undertaking the defendant has suffered damages. The third plea states that the plaintiff undertook that the seed purchased should be good, merchantable and up to the standard of germination and purity required by the statute of Virginia in such case made and provided, and that by the breach of this undertaking the defendant had suffered damages; and the fourth special plea alleges that the plaintiff undertook and promised that the seed purchased were good and merchantable seed, and of such power of germination as to be suitable for sale and planting during the summer of 1911, and that by the breach of this undertaking damages were sustained.

The jury found the issue for the defendant and assessed its damages at the sum of $3,066.42, less a credit of $1,700, and to a judgment on that verdict this writ of error was awarded.

The facts in evidence are as follows: On September 16, 1910, Werner, the agent and salesman of William Jacot, went to the office of the defendant in the city of Petersburg and exhibited to Grossmann, the president of the defendant corporation, an envelope containing a sample of seed which he proposed to sell, on the back of which was printed the words: "Standard Sample. Preserve for Reference. Crimson Calm Clover Seed From Jacot & Mullen, Seed Merchants, No. 1 Water Street, New York." The words "Crimson Calm" appear to have been placed on the envelope in a blank space left for the purpose with a rubber stamp or stencil, all the other words being printed, and the word "Calm" indicated the grade of the seed, the

plaintiff having several grades of crimson clover seed, that known as "Calm" being the lowest grade. The sample having been examined by Grossmann, the president, and Ivey, the secretary and treasurer of the defendant corporation, they determined to purchase some of the seed if a satisfactory price and terms could be agreed upon, and in pursuance of this determination there was prepared by Werner and signed by the defendant corporation a written bid for acceptance. Said bid for acceptance is in the words and figures following:

## "BID FOR ACCEPTANCE.

Order No. ............
Messrs. Grossmann Seed & Supply Co.:
Ship to Petersburg, Va.
At.............
How Ship: O. D.            When: As below.
Terms: As below.

120 bags each, about 220 lbs., 1910 crop Crimson Clover Seed, at $6.75 per bushel of 60 lbs., f. o. b. New York, payable by your 120 days' note, to be dated Oct. 1st, 1910; goods to be carried in warehouse in New York or New Jersey; buyers to have warehouse receipt; insurance to be covered by Jacot & Mullen.

"JACOT & MULLEN,
Per C. H. Werner.

One-half collection charges to each party.
Grossmann Seed & Supply Co.
Interest 6% from Oct. 1st."

This offer was accepted by Jacot & Mullen by telegram, which is in the words and figures as follows:

"New York, Sept. 16, 1910.
Grossmann Seed & Supply Co., Petersburg,
Va.:

Accept your bid made Werner.   Will confirm tomorrow mail.

JACOT & MULLEN."

And on the next day they confirmed the telegram by letter. The sample of seed exhibited was not left with the defendant for the reason that it was the only sample the salesman had and he did not know whether the defendant's bid would be accepted, but on September 21, 1910, invoice for the seed was forwarded to defendant in a letter in which it is stated that another sample drawn from the lot of seed sold to the defendant was being mailed to it, but it does not appear that this sample was ever received by the defendant.

On the invoice for the seed enclosed in the letter of September 21, the following note was written across the face: "We do not guarantee any of the seeds sold in this bill, nor will we be responsible for the crop therefrom. If not accepted on these conditions they must be returned at once" and it appears that this statement was read at the time by the president of the defendant corporation.

In pursuance of this contract of sale 120 bags of crimson clover seed were set aside and marked in the Lackawanna Warehouse, Jersey City, N. J., and a negotiable warehouse receipt for said seed, issued by the Lackawanna Warehouse Company on September 26, 1910, was forwarded to the defendant.   The warehouse receipt was enclosed in a letter as follows:

"New York, Sept. 26, 1910.
"Messrs. Grossmann Seed & Supply Co.,
        "Petersburg, Va.
"Gentlemen:

"We beg to enclose herewith warehouse receipt for the 120 sacks of Crimson Clover Sample Calm, as we agreed to send you, and also an acceptance at 120 days from Oct. 1st, which we will ask you to accept and return to us.

                              "Very truly yours,
                                   "JACOT & MULLEN."

On October 4, 1910, the defendant forwarded to the plaintiff an acknowledgement of said warehouse receipt and its note for the sum of $2,970, dated October 1, 1910, and payable 120 days after date, in settlement for the seed. This note was subsequently curtailed and renewed at various times, until September 11, 1911, when, payment being refused by the defendant upon the last note given it was protested, and the present suit instituted, which resulted, as we have seen, in a judgment for the defendant by which it recovered back all that it had paid by reason of the transaction.

About the first of February, 1911, the defendant, the Grossmann corporation, sent the warehouse receipt to plaintiff and requested him to ship the seed, and the seed were shipped via the Old Dominion Steamship Co. and the N. & W. Ry. Co. and were received by the defendant in Petersburg on February 9, 1911, and stored by the defendant in its warehouse in said city.

It appears that in the summer of 1911 and up to September 20, 1911, nine days after the last note had been presented, the defendant proceeded and continued to sell these seed to its customers in the counties around Petersburg, and, although the seed were in the actual possession of the defendant, in the city of Petersburg, after February

9, 1911, and although the defendant could at any time after said date have inspected the seed, it was not until after September 9, 1911, after the note given in payment had several times been curtailed and renewed, and after practically all of the seed had been sold by it, that the defendant claimed that the seed were not of the quality of the sample exhibited when the sale was made.

There was evidence showing that the seed was well cared for in the warehouse at New Jersey and after it was delivered to the Grossmann Company in February, 1911, and from this evidence the jury had the right to infer that there was no deterioration in the quality of the seed between September, 1910, and September, 1911, except such as was inevitable from the efflux of time; but it is also shown in evidence that it was the rule to buy seed of the crop of 1910 for sale to be used in the season of 1911, and that this was understood by all parties: and further that the quality of the seed, if properly cared for, would not be seriously impaired within that time. There was evidence that when the sample was exhibited to Grossmann Company by Werner, the agent of the plaintiff in error, it was carefully examined by expert seedsmen and found to be of good quality in all respects. It further appears that the seed, when sold to farmers, failed to germinate; that there was general complaint made, as a result of which, after due investigation, Grossmann Company refunded a large sum of money to those to whom the seed had been sold, and that they have undertaken to make restitution to all who purchased crimson clover seed from them.

The first error assigned is because the court permitted the witnesses Grossmann and Ivey to testify with regard to representations alleged to have been made by plaintiff's agent Werner as to the seed sold, prior to and not contained in the written contract in regard to the sale of said seed which had already been introduced in evidence.

We do not think that in any view of the case the ruling of the court constitutes reversible error, as the instructions which the court gave plainly informed the jury that the contract under investigation contained "no warranty of the quality and germinating properties of the seed sold, except an implied warranty that they were of the kind and quality set out in the contract and as shown by the sample, and that they must not consider any evidence or statement of any witness as to the failure of said seed to sprout or germinate, except as evidence tending to show what was the quality or condition of the seed when delivered as compared with the quality of the seed sold with reference to the sample by which the sale was made."

After the evidence was placed before the jury, the plaintiff asked for fifteen instructions, all of which the court refused to give. We shall not undertake to deal with these instructions *seriatim,* as it could not be done in an opinion of reasonable length. The instructions given by the court were sufficient to inform the jury as to the law applicable to the facts. The trial court was of opinion that the only warranties of the seed sold by the plaintiff to the defendant disclosed by the evidence were, that the seed were of the crop of 1910 and of the quality of the sample exhibited and examined at the time of the sale, and upon these two propositions we think the jury were correctly instructed.

The second and ninth instructions asked for by the plaintiff in error and refused by the court present the question upon the solution of which this case depends.

No. 2 is as follows: "The court instructs the jury that if they believe from the evidence that the 120 sacks of crimson clover seed were actually received by Grossmann during the latter part of January or first part of February, 1911, and that the said Grossmann did not, within a reasonable time after the receipt by him of said 120 bags of seed, inspect the same, then the said defendant accepted

the seed and waived any defect, if any there was, in said seed, and the jury shall not consider as evidence in this case any of the statements made by witnesses as to the failure of the seed to sprout or germinate when sowed in the ground in July, 1911, or later, or as to any tests made in September, 1911, or later."

And instruction No. 9, also refused by the court, is as follows: "The court instructs the jury that if they believe from the evidence that the sale of the crimson clover seed in question here was a sale by sample, and if they further believe that the 120 bags of crimson clover seed came into the acutal possession of the defendant on or about the 9th of February, 1911, then the court instructs the jury that it was the duty of the said defendant, then or within a reasonable time thereafter, to inspect the 120 bags of clover seed, in order to ascertain whether the bulk of the seed corresponded with the sample by which the seed were purchased by the defendant: and the court further instructs the jury that if they believe from the evidence that the defendant did not, within a reasonable time after the receipt by it of the 120 bags of clover seed in question, inspect the same, that the defendant cannot now complain of any alleged failure of the bulk of the seed to be equal in quality to the sample by which the seed were purchased."

In 2 Mechem on Sales, section 1395, it is said: "The express warranty, therefore, stands upon different ground in reference to acceptance from that occupied, according to many authorities, by the implied warranty or condition; and it is well settled where an express warranty accompanied the contract, that while, by accepting the goods, the buyer may lose his right to subsequently reject them, he does not thereby necessarily lose his right to rely upon the warranty. The express warranty survives acceptance, and, by the great weight of authority, gives the buyer a

remedy notwithstanding the defects were visible or open to discovery at the time they were received. The buyer may reject them, but he is not compelled to do so: he may retain them and rely upon the warranty."

In *Zabriskie* v. *Central Vermont R. Co.*, 131 N. Y. 72, 29 N. E. 1006, it is said: "Upon an executory sale of goods by sample, with warranty that the goods shall correspond with the sample, the vendee is not precluded from claiming and recovering damages for breach of warranty, although he has accepted the goods after an opportunity for inspection."

In *Holloway* v. *Jacoby*, 120 Pa. St. 583, 15 Atl. 487, 6 Am. St. Rep. 737, the buyer had paid for the goods (corn) in advance; on receipt he found it defective; he kept it and sold it on the best terms he could, giving no notice to the seller until after the sale, and two months after receipt. He then brought an action for damages on the warranty, and was held entitled to recover.

In *Minnesota Thresher Mfg. Co.* v. *Hanson*, 3 N. D. 81, 54 N. W. 311, the court said: "The retention and use of the property, without notice (to the seller) of defects, under the great preponderance of the later, and as we think better, authorities, affects only the right to rescind. The buyer may still rely upon the breach of warranty to defeat a recovery, in whole or in part, in an action brought by the seller to recover the purchase price. Continued use of the property, with knowledge of defects, and without notice or complaint to the seller, may be more or less persuasive as evidence of waiver of defects, but cannot establish such waiver as matter of law."

See Williston on Sales, sections 488 and 489, where the rule is stated that "acceptance of title does not, as matter of law, indicate a waiver of claims for inferior quality of the goods, is supported by a large number of decisions in this country, and is the unquestioned law of England."

We are of opinion that this view is supported by the better reason as well as by authority, but that while the merely taking of title to the goods does not warrant the conclusion that the buyer has agreed to take them in full satisfaction of all the seller's obligations, the retention and use of the goods for a considerable period without any complaint warrants a strong inference that the goods are either what the contract called for, or that the buyer is satisfied to accept them instead of such goods; and that for this reason it is important to give prompt notice of any defects which may exist.

We do think, therefore, that there is any error shown in the ruling of the court upon the instructions to the prejudice of the plaintiff in error upon the point considered.

Instruction No. 9, given by the court, as to the measure of damages, correctly states the rule as applied to the facts of this case.

Nor do we think the court erred in refusing to set aside the verdict as contrary to the evidence. It is true there is no direct evidence that the seed which are the subject of this controversy were not of the crop of 1910. It is difficult to conceive how there could have been direct evidence of that fact upon the part either of the plaintiff or of the defendant. It is plain, however, that the affirmation of the fact that the seed were of the crop of 1910 was made by the plaintiff in error, and it was intended to influence the defendant in error as an affirmation of quality, and was so relied upon. There was no warranty of the germinating properties of the seed sold, but there was evidence that seed of good quality of the crop of 1910 were good, merchantable seed; that it was the well recognized course of business to buy of the crop of 1910 to be seeded in the season of 1911; and that the lapse of a year would not materially affect the quality of the seed. If this be true, then the fact established beyond doubt, that the seed

had practically no germinating qualities strongly tended to prove that they were not grown in the season of 1910, and tended to prove a breach of the affirmation or warranty that they were seed of that year's growth.

With reference to the correspondence of the bulk with the sample, the sample itself was not produced in evidence before the jury; it was not in the possession of the defendant in error. It was exhibited at the time of the purchase, but was retained by the agent of the seller. But the testimony of expert seedsmen was before the jury that the sample exhibited was by them carefuly examined, not only with the eye but with a magnifying glass, and was found to be fresh looking, bright seed, while the bulk of the seed were darker than the sample.

Upon the whole case, we are of opinion that the judgment of the hustings court should be affirmed.

*Affirmed.*