. 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

L. J. UPTON AND COMPANY, INCORPORATED V. REEVE.

June 13, 1918.

Absent, Burks, J.

1. SALES—*Breach of Contract by Seller—Condition of Subject at Place of Shipment and at Place of Destination—Case at Bar.*—Plaintiff sold to defendant 600 bushels of onion sets "f. o. b. Chicago." The sets were to be shipped to defendant at Norfolk, the "sets to be in good merchantable condition at time of shipment, to be screened through 7/8-inch mesh sieve." In an action by the seller against the buyer for the purchase price of the onion sets, where defendant alleged that the plaintiff did not perform the contract on his part in that he did not deliver the onion sets in accordance with the contract of sale, the condition of the onion sets at Chicago at the time of their shipment was in issue in the case, and not their condition at Norfolk, save in so far as the latter was proper evidence of their prior condition at Chicago.

2. SALES—*Breach of Contract by Seller—Evidence—Case at Bar.*—In the case at bar, taking the most favorable view of the evidence for defendant, such evidence left it equally probable that the condition of the onion sets upon their arrival in Norfolk might have been due to the negligence of the transportation company or the natural tendency to decay, due to the onion sets having been grown in a wet season, and not to their not having been in the condition the contract stipulated that they should be at the time of shipment. For the last named default only could the seller be held responsible. He did not warrant the keeping quality of the onion sets, or that they would germinate, nor was he responsible for any injury resulting from negligence of the carrier.

3. SALES—*Action by Seller for Price—Defective Condition of Subject of Sale.*—Where the evidence left it equally probable that the defective condition of the subject of sale complained of by the buyer was as likely due to other causes for which the seller was not responsible, as to a cause for which he was responsible, there was no evidence to support a verdict of the jury in favor of the buyer.

31

4. SALES—*Action by Seller for Price—Defective Condition of Subject of Sale—Case at Bar.*—There was evidence in the very condition of the onion sets on arrival at Norfolk, in the matters of size and the quantity of dirt and trash in them, tending to show that they had not been "screened through (a) 7/8-inch mesh sieve" before shipment from Chicago, and, hence as to the non-screening of the onion sets through such a sieve, there was evidence sufficient to go to the jury to be weighed and considered by them along with all the other evidence in the case on the question of whether the onion sets had been screened before shipment as the contract required. An instruction, therefore, which withdrew the evidence of such condition of the onion sets from the consideration of the jury, was erroneous and prejudicial to the defendant.

5. SALES—*Hypothetical Question—Sufficiency—Case at Bar.*—Counsel for defendant asked a witness the following question: "If a car of yellow onion sets was properly packed in a refrigerated car in Chicago on the 13th day of January, 1916, and arrived here on the 24th day of January, 1916, in the same car in which they were packed, which car was a refrigerated car, and at the time of its arrival the car was cool and in proper condition, ought those onion sets to have been in the same condition as they were at the time they were shipped in Chicago?" Counsel for plaintiff objected to the question on the ground that it was a hypothetical question based upon a partial statements of the facts. The court sustained this objection. It appeared that an affirmative answer would have been given to the question. *Held:* That the question was fatally defective in that it failed to include a statement of the maintenance of a proper condition of refrigeration and ventilation of the car containing the shipment while it was in transit from Chicago to Norfolk. Therefore, there was no error in the action of the court below in declining to allow an answer to be given to the question.

Error to a judgment of the Court of Law and Chancery of city of Norfolk, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

This is an action of assumpsit by the defendant in error, who was plaintiff in the court below (hereinafter designated as plaintiff), against the plaintiff in error (hereinafter

designated as defendant) for $675, the purchase price of 600 bushels of yellow onion sets sold by plaintiff to defendant.

The onion sets were sold "f. o. b. Chicago," which was the point of origin of the shipment, and were to be shipped to the defendant at Norfolk, Va. The other material provisions of the contract of sale were the following: "Sets to be in good merchantable condition at time of shipment, to be screened through 7/8-inch mesh sieve."

The defendant filed two special pleas which averred, in substance, that the plaintiff did not perform said contract on his part, in this, that he did not deliver the onion sets in accordance with the contract of sale, and set up by way of set-off a claim against the plaintiff for $1500 damages because of such alleged breach of contract.

There was a trial by jury, a verdict and judgment in favor of the plaintiff for the $675, the whole amount of the plaintiff's claim, and the defendant brings error.

### THE MATERIAL EVIDENCE.

There was direct evidence on behalf of the plaintiff that the onion sets when delivered on board car in Chicago had been "screened through 7/8-inch mesh sieve," and were "in good merchantable condition;" that they were loaded in a refrigerator car, which, although not stipulated for in its contract of sale, was, so far as appears in evidence, the usual and a proper car for such shipment. And there was testimony of plaintiff's witnesses tending to show that the onion sets, having been grown during an unusually long wet season, were not of good keeping quality, although such testimony was itself in conflict as to whether this lack of keeping quality at gathering time had any bad effect on the shipment to defendant.

The evidence on behalf of the defendant concerned the

condition of the onion sets when they arrived at Norfolk. This evidence tended to show that the onion sets on arrival at Norfolk were not in the condition called for in the contract of sale in two particulars: (1) That they were not "in good merchantable condition," in that they were "half rotten"—"they were like a broom-straw, and there was no life or tissue in them at all;" that when planted they would not germinate; (2) that "a good many" of them "were over an inch" in size and had a large amount of dirt and trash in them, indicating that they had not been "screened through (a) 7/8-inch mesh sieve" before shipment.

There was no evidence for the defendant, however, either as furnished by its own witnesses or by the evidence for the plaintiff, sufficient to show "substantially *all* the conditions surrounding the shipment during the time it was in possession of the transportation company." It did appear, however, from the testimony for the plaintiff that the shipment was made in a refrigerator car as aforesaid; that shipment was made at Chicago on the 13th of January, 1916; that according to the usual time such a shipment would take it should have arrived at Norfolk in four days. It appeared from the bill of lading in evidence that the railroad company undertook to transport the shipment from Chicago to Norfolk in the refrigerator car aforesaid with "vents closed to 300 temperature;" that the shipment was "perishable;" that there was to be "no delay;" and that it was to "allow ventilation." And there was evidence that the defendant at one time made a demand on the carrier for damages for the injury to said shipment, which the latter declined to pay. And there was direct testimony for defendant that when the car arrived in Norfolk it was "cool and in proper condition;" that it arrived in Norfolk on January 24th, being seven days delayed in transit according to evidence for plaintiff; and there was evidence for defendant tending to show that if the said car was properly refrigerated at

the time of the shipment at Chicago and had been kept so in transit between Chicago and Norfolk the onion sets would have been in the same condition when they arrived at Norfolk as they were when loaded on board the car at Chicago. There was no evidence, however, that the car was properly refrigerated when the shipment began, or that it was kept so in transit.

In this condition of the evidence, the trial court gave the following instruction to the jury:

"No. 2. The court further instructs the jury that the evidence in respect to the condition of the onion sets upon their arrival in Norfolk, or on their delivery at Drivers, cannot be considered by the jury except as tending to show their condition when delivered at Chicago, and said evidence cannot tend to show such condition unless substantially all the conditions surrounding the shipment during the time it was in the possession of the transportation company appear from the testimony."

The giving of this instruction is assigned by the defendant as error.

On the trial a Mr. Moreland was introduced by the defendant as an expert witness, and the following questions and answers, and a portion of what occurred between counsel and the court, illustrating the matter in issue, will best appear from the following excerpts from the record:

"Q. If onion sets are shipped in January, and two weeks in transit in a refrigerated car, would they deteriorate?

"A. They ought not to.

"Mr. Baird: I object to that. It takes for granted the whole question that they were in a refrigerated car.

"Mr. Hicks: It is admitted that they were.

"The Court: It is admitted that they were in a refrigerated car, but there is no proof that there was any ice, and that it came all the way from Chicago properly refrigerated.

"Mr. Hicks: It is proved by Mr. Whitehead it was cool.

"The Court: That does not show that it was properly re-frigerated all the way.

"Mr. Hicks: I think the presumption is that it was prop-erly refrigerated. I could not prove that it was constantly refrigerated.

"The Court: Yes, you could, by the railroad company. It is constantly done.

"Mr. Hicks: Does your honor rule the question out?

"The Court: Yes.

"Mr. Hicks: I except.

*       *       *       *       *       *       *

"Mr. Hicks: I asked if they were properly loaded what would affect them coming here.

"The Court: Unless you can show how they came here—

*       *       *       *       *       *       *

"Mr. Hicks: Mr. Reeve said that they were shipped in a refrigerated car, and in the same car and same number that they arrived in.. Now, does your honor rule that I can't ask if they were properly shipped in a refrigerated car, and properly packed in Chicago, and arrived here in the same car, whether they should be in good condition here on arrival?

"The Court: Not exactly that.

"Mr. Hicks: Does your honor say I have to prove every hour—

"Mr. Baird: Let him ask the question, and let us object each time.

"By Mr. Hicks:

"Q. If a car of yellow onion sets was properly packed in a refrigerated car in Chicago on the 13th day of January, 1916, and arrived here on the 24th day of January, 1916, in the same car in which they were packed, which car was a refrigerated car, and at the time of its arrival the car was cool and in proper condition, ought those onion sets to have

been in the same condition as they were at the time they were shipped in Chicago?

"Mr. Baird: I object upon the ground, first, that it is a hypothetical question based upon a partial statement of the facts and the evidence in this case shows conclusively that the defendant here alleged that the trouble was with the railroad and made demand on the railroad.

"The Court: I don't think that is proper on that statement. Note an exception.

"Mr. Hicks: I note an exception."

The second and sole remaining assignment of error by the defendant is to the action of the court below in refusing to allow the question last above quoted to be answered.

*R. R. Hicks* and *John Upton,* for the plaintiff in error.

*Baird & Swink,* for the defendant in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

No authorities are cited either for plaintiff or defendant.

1. Of course, the condition of the onion sets at Chicago at the time of their shipment was in issue in the case before us, and not their condition at Norfolk, save in so far as the latter was proper evidence of their prior condition at Chicago. Further:

It will be observed, from a consideration of the statement preceding this opinion, that the evidence in the case bears upon two aspects of the condition of the onion sets on their arrival at Norfolk, (1) one aspect having reference to their rotten and rotting condition, and the failure of the onion sets to germinate, which may or may not have been brought about by improper refrigeration, or lack of refrigeration of the car containing the shipment in transit, or by the delay in transit, or by the condition in which the onion sets were

at the time of shipment, although measuring up to the contract specifications; and (2) the other aspect having reference to more permanent features of and circumstances with respect to the condition of the onion sets, which, if present when they arrived at Norfolk, indicated, in the nature of things, in accordance with natural laws, that the same condition existed when the onion sets were put on board the car at Chicago; as for example, the size of the onions and the amount of dirt and trash with them, tending to show that they had never been passed through a 7/8-inch mesh sieve.

With respect to the first aspect of the evidence: If we take the most favorable view of it for defendant, such evidence leaves it equally probable that such condition may have been due to the negligence of the transportation company or the natural tendency to decay, due to the onion sets having been grown in a wet season, and not to their not having been in the condition the contract stipulated that they should be at the time of shipment. For the last named default only could the plaintiff be held responsible. He did not warrant the keeping quality of the onion sets, or that they would germinate, nor was he responsible for any injury resulting from negligence of the carrier. Since the evidence left it equally probable that the defective condition complained of by defendant was as likely due to other causes for which the plaintiff was not responsible, as to a cause for which he was responsible, under a well established rule of law, there was no evidence to support a verdict of the jury in favor of the defendant on the first aspect of it, which we have under review. To that extent the intruction complained of was correct.

With respect to the second aspect of the evidence: There was evidence in the very condition of the onion sets on arrival at Norfolk, in the matters of size and the quantity of dirt and trash in them, tending to show that they had not

been "screened through (a) 7/8-inch mesh sieve" before shipment from Chicago, and, hence as to the non-screaming of the onion sets through such a sieve as there was evidence sufficient to go to the jury to be weighed and considered by them along with all the other evidence in the case on the question of whether the onion sets had been screened before shipment as the contract required. The instruction complained of withdrew the evidence of such condition of the onion sets from the consideration of the jury, and to that extent the instruction was erroneous. And since the instruction went to that extent upon such a vital point of the issue made by the pleadings of the defendant, it appears from the record to have been prejudicial to the defendant, and, hence, the giving of it was reversible error.

2. On the subject of the refusal of the trial court to allow an answer to be given to the hypothetical question set forth in the statement above, preceding this opinion: This is the sole remaining assignment of error for our consideration.

That an affirmative answer would have been given to this question appears from the aforesaid statement.

The question, however, was fatally defective in that it embraced both aspects of the evidence above adverted to and yet failed to include a statement of the maintenance of a proper condition of refrigeration and ventilation of the car containing the shipment while it was in transit from Chicago to Norfolk. Therefore, there was no error in the action of the court below in declining to allow an answer to be given to the question.

However, because of the error in giving the instruction aforesaid, we are of opinion to reverse the judgment complained of and grant to the defendant a new trial, which will be accordingly done, to be had not in conflict with the views expressed in this opinion.

*Reversed.·.*