# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## HERMAN NEWBERN v. JOSEPH BAKER AND COMPANY, INC.

### June 10, 1926.

1. SALES—*Warranty of Quality—Merchantable Condition—Instructions—Case at Bar.*—In the instant case, an action by a buyer of cabbage wholesale against the seller, the court instructed the jury that under the contract the seller was obligated to cut, pack and deliver plaintiff the cabbage in question F. O. B. cars in good merchantable condition; and if they believed the cabbage were not in good merchantable condition when so delivered, and further believed that the plaintiff suffered damages because the cabbages were not delivered in good merchantable condition, they should find for the plaintiff.

   *Held:* That there was no error in this instruction.

2. SALES—*Damages—Speculative Damages—Case at Bar.*—In the instant case a seller of cabbage warranted a delivery of the cabbage in good merchantable condition. The jury found and there was evidence to sustain their finding that the cabbage when shipped were diseased and overripe, and there was evidence sufficient to show just what would have been realized by the buyer from these shipments had the stock been in good condition.

   *Held:* That there was nothing speculative about the damage suffered nor about the causes which occasioned it.

3. DAMAGES—*Measure of Damages.*—Damages recoverable for breach of contract are such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach of the contract itself, or such as may reasonably be supposed to have been contemplated by both parties at the time they made the contract, as the probable results of the breach of it.

4. DAMAGES—*Profits.*—Ordinarily, a plaintiff will not be entitled to recover profits or expected gains, for they are generally conjectural and too remote. But if it can be shown that the loss of profits or gains was the natural and proximate results of the wrongful act, and their extent is satisfactorily proved, they may be recovered.

5. SALES—*Damages—Breach of Warranty of Quality—Conclusiveness of Verdict.*—In the instant case, an action by a buyer of cabbage against

the seller, there was a conflict of evidence about the condition of the cabbage when shipped. But that the proximate cause of the injury sustained was the unfit condition of the cabbages when shipped was established by competent evidence from men of experience, whom the jury saw fit to believe.

*Held:* That the appellate court was bound by the finding of the jury.

6. SALES—*Information by Buyer—Carload Lots.*—In an action by a buyer of cabbages against a seller, the buyer had a right to rely upon seller's promise that merchantable stock was to be delivered aboard the cars and was not required to inspect the cabbages when loaded nor afterwards.

7. SALES—*Damages—Inspection—Wholesale Dealers.*—Should a wholesale dealer purchase a carload of produce for resale, the grower to pack, he might reship the car without examination, relying upon the good faith of his vendor. And if the produce turned out not to be of the quality warranted, he could recover damages therefor or he might inspect the produce and accept it, though it did not come up to the warranty, and sue for damages. The right to recover damages in such circumstances is sustained by the weight of authority and is no longer an open question in this State.

8. DAMAGES—*Minimizing Damages.*—A party injured after knowledge must use reasonable effort to reduce his loss.

9. SALES—*Warranty—Sale of Cabbages—Merchantable Condition.*—Where cabbages were sold to a wholesale dealer with a warranty that they were to be in a merchantable condition, by a merchantable condition must be understood to mean a marketable condition by the wholesaler.

10. WORDS AND PHASES—*Merchantable Condition—Marketable Condition.*— Among produce dealers, marketable for immediate retail purposes means one thing, marketable in carload lots to wholesale produce dealers for reshipment in the usual course of trade another. Stock meaurably overripe may be used at once. Germs of disease present may not develop for a while and vegetables marketable at retail to-day may be entirely unsuited for transshipment in carload lots to distant points.

Error to a judgment of the Circuit Court of the city of Norfolk, in a proceeding by attachment.    Judgment for plaintiff.    Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Savage & Lawerence,* for the plaintiff in error.

*Alfred Anderson* and *Thos. W. Shelton,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

In this opinion the terms plaintiff and defendant will be used as they were in the trial court.

The judgment charged to be erroneous arose out of a foreign attachment sued out by the plaintiff, a Virginia corporation, against a citizen of North Carolina, and has its origin in this contract:

"Norfolk, Virginia, April 20, 1923.
"MR. HERMAN NEWBERN,
· "Belcross, N. C.
"We have today purchased from you, your entire crop of cabbage now growing near Belcross, N. C., and which consists of about fourteen acres, for which we agree to pay you one dollar and fifty cents ($1.50) per crate, loaded aboard cars at Belcross. The cabbage are to be in good merchantable condition when cut and packed, and the crates to be well filled. The sum of five dollars ($5.00) is hereby acknowledged by you as part payment of purchase price thereof, the balance to be paid as the cars roll.

"Jos. H. BAKER & COMPANY, INC.
"JOS. H. BAKER, Pres.
"HERMAN NEWBERN.
"Ruth E. Norfleet
"(Witness)."

Under this agreement sixteen carloads of cabbage

were shipped. Eleven of them are admitted to have complied with the contract of purchase, but loss is charged on account of two shipped to Philadelphia, one to Wilkes-Barre, Pennsylvania, one to Jacksonville, Florida, and one to Montgomery, Alabama, aggregating $1,564.29. The items of damage going to make up this sum are:

"Car 1.—No. S. F. R. D. 11589. Wilkes-Barre, 259 crates. Market price $2.25 per crate—$582.75.

"Car 2.—(a) C. B. & O. 36845. Phila. 252 crates—total loss at $1.50 per crate—$378.00.

"(b) R. I. 67722. Phila. 252 crates at $1.50—$478.00 less $21.34—Loss $356.66.

"Car 3.—Car F. G. E. 27681. Jacksonville. 205 crates at $3.00 per crate $615.00, less com. $61.50.

"Car 4.—F. G. E. 31549. Montgomery. 200 crates. Sold for $400.00. Received $32.99—loss $367.01."

Counter claims amounting to $1,002.99 were set up in the defendant's answer. The issue was submitted to a jury which returned a verdict for the plaintiff in the round sum of $1,000.00. There was a motion to set this aside as contrary to the law and the evidence, which motion the court overruled. It did put the plaintiff on terms and entered judgment for $755.29; to this final judgment also exception was duly taken. The first assignment of error is addressed to bills of exceptions 1, 3 and 4. They deal with the same subject matter and will be considered together here as they were in the assignment. No. 1 is addressed to the action of the court in refusing to set aside the verdict; No. 3 because the following instruction was given:

[1] "The court instructs the jury that, under the contract in evidence, Herman Newbern was obligated to cut, pack and deliver to Jos. H. Baker & Co., Inc., the cabbage in question, F. O. B. cars at Belcross, N.

C., in good merchantable condition. Therefore, if you believe from the evidence that said cabbages were not in good merchantable condition when so delivered, and further believe from the evidence that the plaintiff suffered damages because said cabbages were not delivered in good merchantable condition, the plaintiff is entitled to recover and you shall so find."

And No. 4 to the refusal of the court to give this substitute instruction tendered by the defendant:

"The court instructs the jury that the contract under which the cabbages in question in this suit were purchased provides that the cabbages were to be in good merchantable condition when cut and packed, and if the jury believe from the evidence that the cabbages in question in this suit were in good merchantable condition when cut and packed, the defendant is entitled to recover the agreed purchase price therefor regardless of the condition the cabbages were in when they arrived in Norfolk or other subsequent point to which they were shipped; it was only incumbent upon the defendant to see to it that the cabbages were in good merchantable condition when cut and packed, any deterioration thereafter caused by delays in shipment, or otherwise, was at the risk of plaintiff and defendant cannot be held responsible therefor."

Plaintiff was a wholesale fruit and produce merchant in Norfolk. The defendant was a truck farmer living at Belcross, North Carolina. It is manifest from the record that it could not supervise this loading of produce aboard cars and was not expected to do so. The defendant himself states that it was his duty to order cars and load them, and that the plaintiff had nothing to do with that. The contract provides that there was to be paid to the grower "$1.50 per crate loaded aboard cars at Belcross. The cabbages are to be in

good merchantable condition when cut and packed.'' Remembering the situation of the parties and their conduct, and construing these provisions together, we have no difficulty in reaching the conclusion that no error was committed here.

Coming back to the evidence, we are first to enquire, was the plaintiff damaged, and to what extent? Two cars were forwarded to Philadelphia. They had been. paid for and there was a total loss, the amount in one instance being $378.00 and in the other $364.66. The car that went to Wilkes-Barre contained 252 crates, worth readily in good condition on the market there $2.25 a crate or $582.75. Because of their damaged state they were sold for $378.75, entailing a loss of $204.00 which, after deducting on account of commissions $20.40, left a net loss of $183.60. The car to Jacksonville contained 205 crates. Those in good condition sold around $3.00 a crate and there was a ready market for them. Those damaged brought all they could be sold for as such. There was here a net loss of $279.02.

[2] The car to Montgomery was sold for $400.00. The condition of the cabbages was such that the consignee refused to take them. There was realized from them net $32.99 which made the loss in this case $367.01. There is evidence to sustain the finding of the jury to the effect that this damage was due to the fact that these cabbages when cut and shipped were diseased and over-ripe, and there is likewise evidence sufficient to show just what would have been realized from these shipments in each instance had this stock been in good condition.

There is nothing speculative about the damage suffered, nor about the causes which occasioned it.

In *Manes-Owens Co.* v. *Owens & Son,* 129 Va. 183, 105 S. E. 543, at page 201, it is said:

[3] "Damages recoverable for breach of contract are such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things—from the breach of the contract itself, or such as may reasonably be supposed to have been contemplated by both parties at the time they made the contract, as the probable results of the breach of it."

In *Raven Red Ash Coal Co.* v. *Herron,* 114 Va. on page 115, 75 S. E. 756, this court held:

[4] "The general rule in awarding damages is to give compensation for the pecuniary loss—to make amends or reparation for the injury inflicted. The plaintiff is entitled to recover all such damages as are the natural and proximate result of the wrongful act complained of. Ordinarily, a plaintiff will not be entitled to recover profits or expected gains, for they are generally conjectural and too remote. But if it can be shown that the loss of profits or gains was the natural and proximate results of the wrongful act, and their extent is satisfactorily proved, they may be recovered."

[5] It is true that there was a conflict of evidence about the condition of the cabbages when cut and shipped, and it has been vigorously urged that the damage suffered, if any, was due to shipping conditions and to other causes for which the defendant was in no wise responsible. The tendency to decay in stock shipped to Philadelphia was doubtless accentuated by the fact that it was not under refrigeration; for this the plaintiff was not responsible. It had nothing to do with the manner of loading. The primary trouble was defects in stock existing at the date of shipment. It was the proximate cause of the injury sustained.

This fact is established by competent evidence from men of experience in this particular matter. The jury saw fit to believe them and we are bound by their judgment.

Special reliance is placed upon the case of *Upton* v. *Reeves*, 123 Va. 241, 96 S. E. 277, but that is readily to be distinguished from this in judgment. There plaintiffs sold onion sets f. o. b. Chicago to be delivered at Norfolk, "sets to be in good merchantable condition at time of shipment." They reached Norfolk rotted and unsalable. The court said it was impossible to tell whether the trouble was due to negligence of the transportation company, or the natural tendency of onions grown in wet weather to decay, or to their not having been in a merchantable condition at the time of shipment. In this uncertainty no recovery was permitted. The court, however, said that the seller would have been responsible if the onions at the time of shipment had not been in a merchantable condition and if damage suffered was due to that cause. Here, as we have seen, there is positive evidence to the effect that the cabbages were not in merchantable condition at time of shipment.

[6, 7] It is also true that plaintiff did not inspect them when loaded aboard the cars nor afterwards. It was not required to do so. It had a right to rely upon defendant's promise that merchantable stock was to be delivered. Should a wholesale dealer purchase a carload of No. 1 apples for resale, the grower to pack, he might reship this car without examination, relying upon the good faith of his vendor, and if the apples turned out to be culls, he could recover damages therefor. He might do more. He might inspect them and accept them, though they did not come up to the warranty, and sue for damages. The right to recover

damages in such circumstances is sustained by the weight of authority and is no longer an open question in this State.

In *Eastern Ice Company* v. *King*, 86 Va. 97, 9 S. E. 506, Judge Lewis said:

"Complaint is also made of the refusal of the circuit court to give to the jury the following instruction: 'That it was the duty of the plaintiff to have claimed damages, and to have rejected cargoes within a reasonable time after they arrived, and if the jury believe that the plaintiff did fail to make such claims or reject such cargoes within a reasonable time, and that the defendant was injured thereby, then by laches on the part of the plaintiff she would be estopped from now asserting a claim for such damage.'

"This instruction does not state the law correctly, and was properly refused. The rule is that where goods delivered to the buyer are inferior in quality to that which was warranted by the vendor, the buyer may bring an action for the breach of the warranty immediately, without returning the goods or giving any notice to the seller, though it has been held that the failure either to return the goods, or to notify the vendor of the defect in quality, raises a presumption that the complaint of defective quality is not well found. *Vincent* v. *Leland*, 100 Mass. 432; *Fisk* v. *Tank*, 12 Wis. 276 [78 Am. Dec. 737]; *Day* v. *Pool*, 52 N. Y. 416 [71 Am. Rep. 719]; 2 Benjamin on Sales (8th Am. Ed.), section 1354."

See also *Jacot* v. *Grossman Seed Co.*, 115 Va. 90, 78 S. E. 646; *Jacobs* v. *Warthen*, 115 Va. 571, 80 S. E. 113.

In Benjamin on Sales (5th Eng. Ed.), 1006, it is said:

"The second proposition that the buyer may, after

receiving and accepting the goods, bring his action (or set up his counterclaim, per Brett, L. J., in *Thomson* v. *S. E. Ry. Co.* [1882], 9 Q. B. D. 320, at 330) for damages in case the quality is inferior to that warranted by the seller, needs no authority.   It is (so enacted by the Code, section 11 [1] [a], and section 53 [1]) taken for granted in all the cases, there being nothing to create an exception from the general rule, that an action for damages lies in every case of a breach of promise made by one man to another for a good and valuable consideration."

In Williston on Sales (2nd ed.), section 485, it is said:

"What is here insisted upon is that the mere fact that title to the goods has been accepted does not, of itself, warrant the conclusion that the buyer has agreed to surrender a claim against the seller because the latter failed to perform his promise.   The view here advocated, that acceptance of title does not as matter of law indicate a waiver of claims for inferior quality of the goods, is supported by a large number of decisions in the United States, and is the unquestioned law of England."

A different rule prevails in some of the States, and is sometimes known as the New York rule.   Williston on Sales (2nd ed.), 494.   This minority rule our court, as we have seen, has not adopted.

[8-10] Had an inspection actually been made it would have affected only the measure of damages and not the right to recover at all.   We had occasion recently (*Moon-Taylor Co.* v. *Washington-Beaufort Land Company* [decided May 27, 1926], 133 S. E. 498) to restate the established doctrine that a party injured after knowledge must use reasonable effort to reduce his loss.   Had the cabbages been inspected at

Belcross, or Norfolk, and found to be in bad condition, the purchaser should have disposed of them at the nearest available market, and not have forwarded them to distant points.   He did not know this, he made no inspection, but relied, as he had a right to do, upon the promise of his vendor that they would be in good merchantable condition.   We have dealt with this case on the theory that there was an express warranty and that it was broken.   *Upton* v. *Reeves, supra*, is authority for the first assumption.   Was the warranty broken?   The cabbages at time of delivery were to be in merchantable condition and therefore in marketable condition, Words and Phrases.   These words are not of unbending significance.   We must look to their setting.   Marketable for immediate retail purposes means one thing, marketable in carload lots to wholesale produce dealers for reshipment in the usual course of trade another.   Stock measurably overripe may be used at once.   Germs of disease present may not develop for a while, and vegetables marketable at retail today may be entirely unsuited for transshipment in carload lots to distant points.   What did the parties to this contract have in contemplation?   Were they thinking of a retail market and immediate consumption, or did they believe that the purpose was to reship in carload lots in a wholesale way and in the usual course of trade?   To this there can be but one answer.   Men are not apt to buy train loads of cabbages for a retail market.   The jury acted upon this assumption.   They were also warranted in believing that the cabbages were consigned to no market so distant that they would not have reached it in good condition had they been sound and not overripe when shipped.

It only remains for us to ascertain if judgment went for the proper sum.   There was a verdict for $1,000.00,

which on its face is a compromise. It is nowhere claimed that this sum actually represents the damage suffered.

The court dealt thus with the *quantum* of the recovery. "The total gross loss originally claimed by plaintiff was $1,924.29. There was included in this amount $360.00 claimed by the plaintiff as profit that would have accrued on 240 crates of cabbages which the defendant was called upon by the plaintiff on June 23, 1923, to furnish and which were not furnished. The trial court concluded that the evidence did not sufficiently support this contention and reduced the plaintiff's claim by this amount, making the aggregate total of $1,564.29.

"The defendant set up a counter-claim in the answer filed by him of $1,002.99. This included the car which was shipped after the defendant had, according to his own testimony, cancelled the contract over the telephone and on which there was obviously no liability on the plaintiff. Plaintiff, therefore, deducted the total value of this car, or $318.00, leaving an admitted balance due to the defendant, as shown in the statement, of $684.99. However, defendant sold this car and realized $124.01. This was not taken into consideration. Giving credit for this item the admitted balance due the defendant is $809.00. Subtracting this item from $1,569.29, the aggregate total due the plaintiff, there is left the net sum of $755.29 for which the trial court entered judgment." We find no error in this.

Other exceptions in varying forms bring up matters already passed upon.

The jury was properly instructed. Damage and its amount has been satisfactorily proven. Its proximate cause was the overripe and diseased condition of stock

at time of shipment.   Plaintiff has done nothing that estopped it from recovery, and is not precluded therefrom either by inspection or by failure to inspect. There is no error in the ascertainment of the amount for which judgment went.

The judgment must be affirmed.

*Affirmed.*