**TRIPLETT LUMBER CO., Inc. v. PURCELL.**

No. 6169.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 21, 1950.

Decided Dec. 9, 1950.

George W. Reilly, Richmond, Va. (Wilbur G. Mitchell, Richmond, Va., on the brief) for appellant.

W. Griffith Purcell, Pro se, on the brief.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

On October 28, 1948, Pre-Fab Industries Corporation, (hereinafter called Pre-Fab), filed its petition in bankruptcy and on that day was adjudicated a bankrupt. It listed in its schedules attached to the petition the Triplett Lumber Company, Incorporated, (hereinafter called Triplett), as a

general unsecured creditor. At the first meeting of the creditors, W. Griffith Purcell was elected trustee in bankruptcy for the bankrupt's estate.

On January 6, 1949, Triplett filed its petition setting forth that it was a creditor of the bankrupt; that on April 19, 1948, it had purchased from the bankrupt certain lumber that was later piled separately and marked for appellant; that some of said lumber had been removed from said piles by the bankrupt; that by agreement with the bankrupt so much of the purchase price as was necessary was to be set off by Triplett against the indebtedness due it by bankrupt; and praying that the lumber might be abandoned to it, the purchase price set off against said indebtedness, and if any balance remained due to Triplett it be adjudged to be a prior and preferred claimant.

On May 31, 1950, after evidence and argument, the Referree in Bankruptcy entered his order denying the relief prayed by Triplett and adjudicating it a general unsecured creditor in the sum of $2,585.29. On June 6, 1950, Triplett filed its petition for a review of said order by the District Court of the United States for the Eastern District of Virginia. On June 15, 1950, the District Court entered its order affirming the order of the Referee in Bankruptcy entered May 31, 1950. From this order Triplett has appealed to us.

After some preliminary negotiations, Triplett, as buyer, and Pre-Fab, as seller, entered into a contract of sale in April, 1948, for certain poplar lumber which Pre-Fab had in its yard at Richmond, Virginia. Triplett insisted that there must be an inspection to determine the quantity of each grade of lumber. This inspection revealed that much of the poplar lumber was of shorter lengths than is used in the lumber trade and, in June, 1948, Triplett informed Pre-Fab that, accordingly, Triplett expected a concession from the agreed price. It was also agreed that so much of the purchase price as was necessary would be applied to liquidate Pre-Fab's previous indebtedness to Triplett.

Triplett, with Pre-Fab's acquiescence, made efforts to sell this lumber to third parties. By agreement between Pre-Fab's trustee in bankruptcy and counsel for Triplett, the lumber was sold for $2,114.03, and the proceeds were kept separate. On the date of Pre-Fab's adjudication in bankruptcy, it was indebted to Triplett in the sum of $2,585.29.

The only question before us is whether we can hold as clearly erroneous the decision of the District Court, confirming the Referee's report, that title to this lumber did not pass to Triplett from Pre-Fab before the adjudication in bankruptcy. We cannot so hold so the decision below must be affirmed.

After extensive findings of fact, the Referee handed down the following Conclusions of Law: "The agreement of April 19, 1948, was not binding on Triplett because the prices quoted were subject to inspection and the inspection revealed that the lengths of the lumber were shorter than Triplett expected they would be when the prices were agreed upon. There was no price, either market price or agreed price, at which Pre-Fab could have been compelled to deliver the poplar lumber to Triplett or which Pre-Fab could have compelled Triplett to pay or credit to the account. No contract of sale binding on both parties was ever made. Triplett's status after June 2, 1948, was that of agent for Pre-Fab. Title to the lumber never passed to Triplett. The lumber was the property of Pre-Fab at the time the petition in bankruptcy was filed. Triplett is a general unsecured creditor of the bankrupt in the amount of $2,585.29."

The District Court filed no formal opinion but stated "the order of the Referee in Bankruptcy * * * is plainly correct and should be affirmed."

Triplett's first contention that title to this poplar lumber passed to it at the time, and by force, of the agreement in April, 1948, is quite without merit. At that time, there yet remained to be done an essential thing, the inspection of the lumber at Triplett's insistence, to determine the quantity, quality, grades and lengths of the lumber. Any possible doubt on this question is clearly resolved by the testimony of I. C. Triplett,

Jr., President of the Triplett Lumber Company:

"Q. When did you consider that the title to the lumber passed from Pre-Fab Industries, Inc. to Triplett Lumber Co.? A. We considered the lumber as ours and being held for our account as soon as the inspection was made because we paid for half of the inspection on a portion of the lumber, if not all of it, and we considered it was ours and being held for our account.

\* \* \* \* \* \*

"Q. Did that inspection have to do with quantity as well as grade? A. Yes, sir, they determine quantity, quality and grade.

"Q. Did Triplett Lumber Company, Inc. know the lengths of this lumber at the time it purchased the lumber? A. No, the only thing they knew was the species.

"Q. Would the lengths of the lumber make any difference? A. Yes, they would make a difference in the value of the lumber."

We come next to Triplett's contention that title to the lumber passed to it, at the time, and as a result, of the inspection, which was completed well before the adjudication of Pre-Fab in bankruptcy. Here, again, we think the contention lacks merit.

And once more, we quote extracts from the testimony of I. C. Triplett, Jr.:

"Q. If it had developed that all that lumber was in eight-foot lengths, would you have considered you were bound to take it at the prices mentioned for the grades specified? A. We would not, we would have considered that a misrepresentation.

"Q. Had there been any representation to you as to the length of lumber?

A. The species was mentioned to us as being Poplar, and unless it is specified, it it taken for granted that it is the average.

\* \* \* \* \* \*

"A. We considered it ours.

"Q. At what price? A. There was no definite price set at that time because of the grade and lengths.

"Q. You knew the grade and lengths at that time, didn't you? A. Yes.

"Q. You were dissatisfied with the prices that you had mentioned in your letter of April 19th, because of the grade and lengths? A. That is right, and Pre-Fab Industries wanted or we were going to tell them what he could get for it and revise prices accordingly.

"Q. If on August 25th, Pre-Fab Industries had called upon you to take that Poplar at the prices named in your letter of April 19th. Did you consider that you were obligated to do so? A. Not at those prices.

\* \* \* \* \* \*

"Q. And the reason that you didn't remove that Poplar Lumber from Pre-Fab yards between the time of the inspection and the date of adjudication in bankruptcy was because you and Pre-Fab had not arrived at any adjusted price for the lumber, satisfactory to you both, is that right? A. That is right."

Further confirmation is found in letters passing between Pre-Fab and Triplett. Thus, in a letter from Pre-Fab to Triplett, dated May 20, 1948, we find: "It is our understanding that the check for $500 will be deposited currently and that the check for $3,825.86 will be held by you undeposited until you have purchased our poplar and have forwarded us a check therefor."

A letter from Triplett to Pre-Fab, dated August 16, 1948, (after the inspection) states:

"As soon as the lumber is accepted from off your yard, you will please render us invoice \* \* \*.

"We will make efforts to sell the Poplar and hope to have something favorable to offer you on this stock during the week."

Another letter from Triplett to Pre-Fab, dated August 25th, 1948, contains this paragraph: "According to our records this will leave a balance due us of $1,987.33, which we will apply against the Poplar when we are able to move it at a reasonable price."

■ We have carefully examined the Virginia cases set out below, which are cited by Triplett, and we find nothing in these cases requiring a reversal of the judgment in the case before us. Ellis & Meyers Lumber Co. v. Hubbard, 123 Va. 481, 96 S.E. 754; Latham v. Powell, 127 Va. 382, 103 S.E. 638; Geoghegan Sons & Co. v. Arbuckle Bros., 139 Va. 92, 123 S.E. 387,

36 A.L.R. 399; Newbern v. Joseph Baker & Co., 147 Va. 996, 133 S.E. 500; Van Duyn v. Matthews, 181 Va. 256, 24 S.E.2d 442. The Virginia rule, which does not differ from the generally accepted rule, is thus set out by Mr. Justice Sims, in Ellis & Meyers Lumber Co. v. Hubbard, 123 Va. at page 494, 96 S.E. at page 757: "That is to say, when the subject of the contract is or has become specific, then—(b) Whether or not the property or title thereto passes becomes wholly a matter of the mutual intention of the parties, vendor and vendee— wholly a matter of contract between them."

Nor is Triplett helped by the decision of our Court in Hughes v. Diehl, 4 Cir., 178 F.2d 329, which was a warranty case in a contract for sale by description of unascertained goods. See, also, Williston on Sales, (2d ed.) §§ 471–474.

We hold, then, applying the rule stated just above by Mr. Justice Sims, that we cannot reverse, on the score of its being clearly erroneous, the decision of the District Court (affirming the Referee) that it was never the intention of Triplett (buyer) and Pre-Fab (seller) that title to the poplar lumber should pass from Pre-Fab to Triplett at any time prior to the adjudication of Pre-Fab in bankruptcy.

The judgment of the District Court is affirmed.

Affirmed.