## MOORE PRINTING TYPEWRITER COMPANY v. NATIONAL SAVINGS AND TRUST COMPANY.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 21. Argued October 27, 28, 1910.—Decided November 28, 1910.

Where the prayer of a bill by a trustee is simply for permission to resign the trust and turn over the subject-matter thereof to another trustee in accordance with the terms of the agreement itself, the action cannot be treated as one of, or in the nature of, interpleader.

Where the filing of a cross bill would tie up property pending determination of title, the court does not err in requiring the party filing it, to apply for an injunction and give a bond as required by the rules of the court; nor will this court assume that the amount of the bond was too large when such party did not invoke further action, but took an appeal before the expiration of the time allowed for complying with the provisions of the decree.

31 App. D. C. 452, affirmed.

THE facts are stated in the opinion.

Mr. Charles A. Keigwin, with whom Mr. George P. Montague was on the brief, for appellants.

Mr. J. J. Darlington for appellee, National Savings and Trust Co.

Mr. John J. Crawford for appellees, holders of trust certificates.

Mr. J. K. M. Norton for appellees, Thompson and others.

MR. JUSTICE MCKENNA delivered the opinion of the court.

This is a bill in equity brought by the National Sav-

ings and Trust Company against the appellants and certain others to obtain a decree to permit it to resign a trust created by the deposit with it of 35,005 shares of the stock of the American Planograph Company. The stock was deposited under an agreement signed by George R. Cornwall, Marion Bryan, Charles T. Moore and others, all of whom were made parties to the bill. The agreement contained the following provision:

"And it is hereby mutually agreed by and between all the parties hereto that on the receipt of the respective certificates of the said 35,005 shares of stock by the said trustee from the parties of the first part, the said trustee shall cause to be delivered to each of the parties of the first part who contribute toward said 35,005 shares an assignable trust certificate, which shall recite the number of shares so deposited by him, and state that the holder thereof is entitled to an equitable interest in the said 35,005 deposited shares equivalent to the number of shares so conveyed to and deposited with said trustee by each of said depositors respectively, and that the holder of said trust certificate or certificates has no right to vote on any such shares, but shall be entitled to receive his pro rata share of any dividends paid on the deposited stock, and that on and after March 31, 1911, each holder of such trust certificate will, on surrender thereof to the said trustee, be entitled to a certificate of an equal number of shares of stock of the American Planograph Company, and the trustee shall forthwith cause to be transferred on the books of the American Planograph Company the stock so held in trust and deliver the certificates thereof to each of the holders of the said trust certificates."

The agreement transferred the legal title to the Trust Company, and authorized it to vote the stock in the meeting of the Planograph Company, "for such measures and such persons as the owners of a majority in amount of said trust certificates shall direct." Also to collect

dividends and pay them to the holders of the trust certificates. The agreement also contained the following provision: "It is further agreed that in case the said trustee shall decline to accept or serve, or upon the resignation of said trustee during the term for which it is or may be appointed or elected, then the holders of a majority in amount of the trust certificates shall elect a trustee to fill the vacancy or vacancies." It was further provided that the agreement should continue in force until April 26, 1911, but that the trust might be dissolved before that time by a vote of three-fourths of the depositors.

It is alleged in the bill that the National Savings and Trust Company notified the depositors of its desire to resign its position as trustee, and that the depositors, by an instrument in writing, duly nominated and appointed the New York Trust Company of the city of New York and State of New York to be trustee in its place instead. And further, that on May 22, 1906, it received a written notice from the appellants, purporting to be issued by themselves and others, that the shares had been transferred to it "by breach of trust on the part of the holders of certain of the shares," who were trustees of the appellants, and that suit had been commenced by the beneficiaries of the trust in the State of West Virginia against the Planograph Company to determine, among other things, the ownership of such shares.

It is also alleged that two suits had been brought and were pending against the Savings and Trust Company and others in the Supreme Court of the District, respectively numbered 26731 and 26847, in which restraining orders were issued and were enforced, restraining it and the other defendants, until the court's further order, from removing or attempting to remove from the District of Columbia, and from selling, encumbering or in any manner disposing of any of the shares of the stock of the Planograph Company in its possession or custody. And that by

reason thereof, and of the written notice served upon it by the Moore Company, it is "advised that it may not transfer the said shares of stock in its possession to the said New York Trust Company as its successor in the said trust, without the risk of liability and loss, except through the aid of this court, and that it is entitled in its said capacity as a trustee to apply to this court for its instructions and its protection in the premises."

The prayer of the bill was that the Savings and Trust Company "may be permitted to resign and retire from its said trust, and to surrender the shares of stock now held by it to a new trustee; and that the complainant may be instructed by the court as to the manner and form of transfer by it to its successor in the said trust."

Costs were also prayed and general relief. Copies of the various instruments referred to were attached to the bill.

The answer of the Moore Company neither admitted nor denied the averments of the bill, except that it admitted giving notice to the Savings and Trust Company as alleged by it and the pendency of the suit in West Virginia as alleged. Also, that the shares of stock stand in the name of the Savings and Trust Company on the books of the Planograph Company.

The answer alleges new matter to the following effect: In January, 1900, Moore, Bryan and Cornwall, three of the appellants, entered into a conspiracy for the purpose of wrecking the Moore Company and a company called in the answer the Liomatrix, the stock of which is owned by the Moore Company, and acquiring for themselves the assets of the Moore Company, including certain inventions of Moore. To this end they procured the organization of the Planograph Company, the purposes of which were of the same general character with those of the Moore Company.

Afterwards, by the use of the new incorporation and by a course of fraudulent representations and conduct, which included the piracy of the most valuable machine of the Moore Company, the officers of the latter company were induced to believe that the Planograph Company possessed some inventions of great value, and that the Moore Company would be benefited by a consolidation of the two companies. Such consolidation was effected in 1901, upon terms and in a manner which gave complete control of the consolidated companies to the confederates, and that they have used such control for their own profit, and have by various fraudulent means possessed themselves of a very large part of the 35,005 shares of that company's stock, deposited with the Savings and Trust Company. A detail of the transactions by which this was effected is not necessary to recite.

The answer concludes as follows:

"This defendant admits, on the allegations set forth in the bill of complaint, that the plaintiff is entitled to resign and be relieved of its trust, but it alleges, on information and belief, that the New York Trust Company has not consented to accept said trust; and, further, that no other responsible trust company will be likely to accept the same if it has full knowledge of the facts, and in view of all the facts and circumstances hereinabove set forth, including the restraining orders granted by this court in equity, suits Nos. 26731 and 26847, referred to in the bill of complaint, which orders still remain in force, and prohibit the removal or transfer of the said 35,005 shares of Planograph stock, defendant submits that the plaintiff can be granted relief and the rights of all parties protected only by the appointment of a receiver for the said 35,005 shares of Planograph stock affected by said trust, who shall hold said stock subject to the orders of this court until the rights of the various claimants thereto have been settled and determined."

Certain exhibits were attached to the answer, by which it is alleged its allegations are sustained.

The individual appellants, by a joint answer, adopted that of the Moore Company.

All of the other defendants in the suit and appellees here answered, and gave consent to an order permitting the Savings and Trust Company to resign its trust and surrender the shares of stock held by it to the New York Trust Company. Two of those so consenting are the complainants in the suits Nos. 26731 and 26847, referred to above.

The cause was set down for hearing on bill and answers, and on December 13, 1907, it coming on to be heard, a decree was entered, authorizing and directing the Savings and Trust Company to deliver to the New York Trust Company all of the certificates of stock in the American Planograph Company which it held by virtue of the agreement alleged in its bill, "and to make such endorsement upon such certificates as may be required to enable its said successor to take complete title to such certificates." And it was ordered that upon compliance with the decree it should be discharged from all liability to the defendants in the suit in respect of such certificates and its action as trustee under such agreement.

The decree concluded as follows:

"Provided, however, that this decree and order shall be void if on or before the 23d of December, 1907, the defendants The Moore Printing Typewriter Company, Russell W. Montague and George P. Montague, or one or more of said last-named defendants by way of a cross bill in this case or by original bill in this court, as they may be advised, shall apply for and obtain a restraining order or injunction with undertaking and security as required by equity rule 42 of this court, prohibiting such transfer of said certificates."

The decree was made by consent of all parties ex-

cept by the Moore Company and the individual ap-
pellants.

On December 13 the Moore Company offered a cross
bill, which repeated the charges of fraud contained in
its answer, and made other charges of misconduct. It
prayed that the Savings and Trust Company be required
to hold the stock subject to such order or orders as should
thereafter be made, and that it be a trustee of such stock
for the purpose of the cause, and that in the event that
it be permitted to resign the person substituted for it
be deemed a trustee of the stock and hold it subject to
the orders of the court. The other relief prayed is not
necessary to mention.

Leave to file the cross bill was granted. Nothing else
was done under it, but the appellants took an appeal
from the decree to the Court of Appeals, by which court
the decree was affirmed.

The contentions of the parties turn upon the question
whether or not the bill is one of interpleader. Appellants
contend that it is one in the nature of interpleader, being
in some respects identical with it, but involving "another
principle of equity, namely, a trust, and it has, therefore,
a greater scope, and is free from many of the technical
restrictions of strict interpleader, particularly as applied
to bailors and bailees, principal and agent," &c.

The Court of Appeals considered the bill as one of
strict interpleader and rejected the contention of ap-
pellants (they were appellants also in the Court of Ap-
peals), because the claim "asserted was not derived
from the contractual relation existing between plaintiff
[Savings and Trust Company] and the depositors of the
stock." In other words, that the claim of appellants and
the claim of the depositors were not derived from a com-
mon source.

The Court of Appeals quoted from *Richardson* v. *Belt*,
13 App. D. C. 200, as follows:

"An essential foundation of the equity of interpleader is, that the party seeking the relief must not be under an independent or special liability to one of the claimants. Adams Eq. 204; 3 Pom. Eq., sec. 1327. Where there is an independent liability of the party seeking the relief to one of the several defendants, arising out of the relations subsisting between them or upon a special contract creating, for example, the relation of bailor and bailee, landlord and tenant, or creditor and debtor, there can be no interpleader, unless it be made to appear that others have acquired a claim of title or interest derived under the said liability."

But it is not necessary to consider the essentials of a bill of interpleader or one in the nature of interpleader. It is very certain that the bill in the pending case was not intended to be either. The prayer of the bill is for permission to resign the trust created by the agreement between the Savings and Trust Company and the depositors of the stock, a right which the agreement expressly gives it. But appellants say:

"In the present case, either the complainant, the Trust Company, had a right to compel the adverse claimants to come into court and litigate their claims, or it had not. If it had not, the bill should have been dismissed. If, on the other hand, it had such right, as it clearly had, then the stock in controversy should have been awarded to the parties who established their ownership to it, that is, to the appellants; who, it is submitted, fully established their claims, while the defendant-appellees practically made default, which in a case of this nature amounts to a confession that they had no right or title as against appellants to the thing in controversy."

The assumptions of these statements are not justified. The complainant did not bring the appellants into court to interplead their claim to the stock with the depositors of it. The complainant sought only by its bill to termi-

nate its relation to the depositors of the stock and transfer. the trust it had undertaken to some one else. There were good reasons for doing so. It had taken the custody of and assumed duties in regard to property, the title to which had come into dispute. Every act that was done in discharge of those duties would be under the shadow of illegality and the possibility of litigation. And besides something had been done under the trust, the propriety of which might be questioned by the new claimants to the property. Whether justifiably, was submitted to the court, and likewise the responsibility of the new trustee. It must be remembered that after the Savings and Trust Company received notice of the new claimants of the stock it had to proceed, if it proceeded at all, in the possibility of such claim being declared the legal one. It sought, therefore, to relieve itself of the trust and receive a complete discharge from past and future responsibility. The appellants sought to make it a trustee for them during, it may be, a protracted litigation. It was something more, as we have seen, than a mere holder of the stock. It had active duties to perform. We see no error, therefore, in the action of the court on the bill and answers.

But it is said that the trial court erred in refusing to receive the cross bill except upon the terms prescribed in the decree, which were, as we have seen, that they apply for an injunction and give a bond, as provided by equity rule 42 of the court. In the motion for permission to file the cross bill, orders were asked that would have suspended the operation of the decree and the transfer of the stock certificates. And it will further be observed that the stock was not to be transferred by the decree to those whose title appellants were seeking to divest, but to a responsible trust company, and that there were shares of stock held by the Trust Company in which others had an interest which, it is not contended, is subject to a trust in favor of appellants. The purpose of the cross

bill was, therefore, to prevent the use of property under a claim of title to it which would take time to determine, and it was not inequitable in the court to require security of the appellants, the security which was required of other litigants who sought the same kind of relief.

Appellants, however, contend that the requirement was inequitable, because the amount of the bond would have been large and beyond their ability to give. But we may not assume that the court's action would have been in excess of what the circumstance would have justified. The appellants did not invoke further action, but took an appeal, even before the expiration of the time which they had been given to comply with the provision of the decree.

*Decree affirmed.*