𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫.

## ELLIS AND MEYERS LUMBER COMPANY V. HUBBARD AND OTHERS.

September 19, 1918.

Absent, Burks, J.

1. SALES—*Executory Contract—Subject of Sale not in Existence.*—Where lumber, the subject of a contract of sale, was not in existence at the time the contract was made, the subject of the contract, therefore, was not specific at that time, and the conditions specified in the contract being unperformed, the contract with respect to all of its conditions was entirely executory. To convert this executory contract into a complete bargain and sale of the lumber, so as to pass title to the vendees, two things only were essential: First, that the lumber should become specific—*i. e.*, that it should come into existence and be segregated and set apart as the subject of the contract; and second, the performance of the other conditions precedent, if any, to the passing of the property or title, as stipulated in the contract.

2. SALES—*When Title Passes—Specific Subject Matter—Intention.*—That the subject thereof must be specific is essential to the validity of every contract of bargain and sale. It inheres in the very nature of the transaction that a bargain and sale cannot be made of chattels not yet identified—the ownership cannot change, the property or title cannot pass, until the particular property which is the subject of the contract becomes ascertained. This is true independently of the intention of the vendor and vendee. So long as the subject of the contract remains undetermined, the law will conclusively presume that the contract is executory, and no property or title can pass from vendor to vendee. This, however, is the sole element in such a contract which is independent of the intention of the parties.

3. SALES—*When Title Passes—Intention of the Parties—Subject of Sale Specific.*—When the subject of a contract of sale is or has become specific, whether or not the property or title thereto passes becomes wholly a matter of the mutual intention of the

parties, vendor and vendee—wholly a matter of contract between them. In such case, neither delivery of the chattel to the vendee, nor the completion of its manufacture, or anything else to be done to it so that it may be ready for such delivery, nor the measurement or testing of it (when it is to be measured or tested in any way), nor anything further to be done to ascertain the quality, or the quantity, or the price; nor the payment of the purchase money, or any part of it, is essential to the passing of the property or title to the vendee, if the contract provides it shall so pass at a stated time and when the chattel is in a condition stated in the contract. The conditions stipulated in the contract as to these matters are the sole conditions precedent to the passing of the property or title, all other conditions precedent being thereby waived; the vendor being bound by the contract to pass and the vendees to accept the property and title thereto when such conditions have been performed or exist—and hence the property or title then passes to the vendees under the terms of the contract.

4.  SALES—*When Title Passes—Intention of the Parties—Subject of Sale Specific—Case at Bar.*—In the instant case, the lumber, which was the subject of the contract, after it came into existence by being sawed, was piled on sticks on certain land leased by the vendees, as provided for in the contract—which was away from the mill and other lumber of the vendor—there being no other lumber than that which was the subject of the contract on such land. The lumber was thus segregated and set apart by delivery on the leased land, and this was in legal phrase the appropriation of specific goods to the contract, the sole element deficient in a perfect sale was thus supplied. And this was done, not under subsequent mutual agreement of the parties—which would have been sufficient to convert the prior executory contract into a complete bargain and sale—but under the very terms of the contract in writing, which expressly provided that the title should then pass to the vendees.

5.  SALES—*Construction—Intention of Parties.*—The agreement is just what the parties intend to make it, if that intention is clearly and unequivocally manifested, *cadit questio.*

6.  SALES—*Conditions Subsequent—When Title Passes.*—A complete bargain and sale of chattels may be made subject to a condition subsequent that the chattels shall conform to any stipulated specifications. In such case, the title to the chattels passes at the time of the bargain and sale, notwithstanding the fact that the sale is subject to be defeated in whole or in part by the failure of the chattels to fulfil the stipulated specifications, when such fact is subsequently ascertained. The bargain and sale in such case is a conditional one, to be sure; but the con-

dition is a subsequent and not a precedent condition to the passing of the title, and in no way prevents the latter taking place.

7. SALES—*When Title Passes—Lord Ellenborough's Rules.*—Where the contract of sale is express, plain and unequivocal, Lord Ellenborough's famous rules to determine the intention of the parties as to when the property or title of the subject of the sale shall pass, are inapplicable, since they do not have to be resorted to in order to ascertain the intention of the parties to the contract.

8. SALES—*When Title Passes—Conditions Precedent to Payment Distinguished from Conditions Precedent to Passage of Title—Case at Bar.*—In the instant case all of the provisions of the contract relied on for appellees as conditions precedent to the passing of the property or title thereto, appear from the contract itself as conditions precedent only to the payment in full of the purchase money, and not to the passing of the property or title thereto—a wholly different thing. The only conditions precedent to the passing of the property or title, as expressly provided in the contract, were those and those only which were to serve to segregate and identify the lumber—to appropriate it, as the subject of the contract.

9. ESTOPPEL—*Assignment—Title to Lumber Sold.*—The vendor of lumber made an assignment for the benefit of his creditors and included in the assignment "all the remainder of the purchase price due" from the vendees. Under the contract of sale title to the lumber had passed to the vendees.

*Held:* That the acquiescence of the vendees in the assignment did not estop them from asserting title to the lumber, or any right of set-off against the purchase money for such lumber by reason of any advances or loans made by them to the vendor of the lumber under the contract.

10. ESTOPPEL—*Assignment—Title to Lumber Sold.*—Nor, under these circumstances, will the acquiescence of the vendees in the delivery of the lumber by the trustees at the shipping point specified in the contract, and its inspection and acceptance by them, estop the vendees from asserting their title to the lumber, where by the terms of the contract of sale, if the vendor failed to deliver the lumber at the shipping point, the vendees were authorized to do so and deduct the expense thereof from the amount due the vendor.

11. ESTOPPEL—*Answer in Garnishment Proceedings—Title to Lumber.*—The answer of vendees in garnishment proceedings admitting a balance of indebtedness under the contract of sale to the vendor is not inconsistent with vendees' claim of title to the lumber itself under the contract of sale or their right

to charge the vendor with any advances or loans the vendees may have made to him under the contract of sale or otherwise.

12. IMPLIED CONTRACTS—*Where Express Contracts Exist.*—Where there is an express and enforceable contract in existence which governs the rights of the parties, the law will not imply a contract in contravention thereof. It is only in the absence of an express or of an enforceable contract between parties, that the law (whether at law or in equity) will, from circumstances, imply a contract between them.

13. SALES—*Advances by Vendees.*—Where by a contract of sale the vendees bound themselves to lend a certain sum to the vendor as an advance upon the purchase money for the subject of the sale, the vendees are not prohibited from making further advances to the vendor, and having done so, prior to a deed of assignment by the vendor, the vendees have an equitable right to set off such further advances against the vendor in any settlement of accounts with him, and have the same right against the trustee in the deed of assignment.

Appeal from a decree of the Circuit Court of Russell county. Decree for complainants. Defendant appeals.

*Reversed and remanded.*

The controversies in this cause grew out of the following contract between one B. F. Morgan and appellants, viz:

"This agreement, made this 6th day of December, 1912, by and between B. F. Morgan, of Honaker, Virginia, party of the first part, and the Ellis and Myers Lumber Company, party of the second part.

"Witnesseth: That the party of the first part has this day sold to the party of the second part *400,000 feet of oak, poplar and chestnut lumber of own manufacture cut and to be cut and delivered to party of second part out of V. B. Meade and J. W. Hubbard timber, said mill being on J. W. Hubbard's land on south side of Chestnut Ridge,* the said saw-mill being E. S. Wilson's and Kenser Fuller's to be paid by the said party of the second part upon the following terms and conditions, to-wit:

"All 4-4 stock must be of good average lengths and widths, the terms of which is meant largely 14 and 16' lengths, the remainder may be 8, 10 and 12' with as little 8 and 10 lengths as possible. Widths must be as good as can be obtained from the logs.

"The said 4-4 stock must be graded according to the National Hardwood Lumber Association rules and full car loads of each grade and kind of wood must be loaded separately in the car at shipping point, the price to be as follows:

"4-4 No. 2 common and S. W. chestnut at $9.00 per 1000' less 2 per cent.

"4-4 No. 1 common and S. W. chestnut at $25.00 per 1000' less 2 per cent.

"4-4 No. 1s and 2s chestnut at $38.00 per 1000' less 2 per cent.

"4-4 No. 1s and 2s poplar at $46.00 per 1000' less 2 per cent.

"4-4 sap poplar at $33.00 per 1000' less 2 per cent.

"4-4 No. 1 common poplar at $25.00 per 1000' less 2 per cent.

"4-4 1s and 2s oak at $38.00 per 1000' less 2 per cent.

"4-4 No. 1 common oak at $25.00 per 1000' less 2 per cent.

"4-4 No. 2 common oak at $15.00 per 1000' less 2 per cent.

"Export oak: 3½ x 12-10' and up long and 5 x 12-15' 6" and up at $21.00 5 x 12-6' 4", 12' 8", 14' 6" at $18.00.

"All stock must be well manufactured, cut plump to thickness, well edged and trimmed and to be first-class merchantable articles, under the rule of each grading.

"The party of the first part agrees to use great care and not knowingly deliver any No. 2 and No. 3 common in the poplar and any No. 3 common in the oak and chestnut and the party of the second part shall cause all timber shipped

to be carefully examined and inspected at the shipping point in case any lumber so examined and inspected, shall be found and determined by the inspector at shipping point to be below the grade called for in this contract, then the party of the first part shall remove and take of the same at his own risk. The party of the first part further agrees to *lease to the party of the second part* until one year from date *some suitable and convenient place of land on top of Chestnut Ridge and location to be mutually agreed upon the parties hereto. The delivery of the said lumber shall be made by the party of the first part to the party of the second part by piling the same on sticks in a workmanlike manner and in a good substantial manner upon said land, whereupon the delivery of said lumber shall be deemed complete, and said lumber shall thereupon become and thenceforth remain the property of the party of the second part absolutely and unconditionally.* The said party of the first part agrees to keep an account of said lumber from time to time as the same is being delivered on said property and shall grade and inspect said lumber as it is being moved and keep an account of each grade and kind. *And it is agreed that said account and tally shall not be conclusive upon the party of the second part until the same is verified by the count and inspection by the party of the second part when received at loading point.* Said party of the first part shall furnish to the party of the second part a statement showing the quantity delivered on said premises from time to time and upon presentation to verify said statement and if found correct then the said party of the second part agree to pay to the party of the first part the sum of ($5.00) five dollars per thousand feet on each thousand feet lumber sawed, when properly piled on said leased premises. *In the event said lumber does not hold out when counted and inspected at loading point by the party of the second part or its inspector, the party of the first part agrees to make such*

*deficiency good whether the same is caused by error in the original count or by any cause whatever.  The party of the first part agrees that he will, as the agent of the party of the second part, on or about the first day . . . . . . . . . ., 19. .
begin to haul, secure cars, ship and forward the said lumber as the party of the second part may direct at the expense of the party of the first part,* at the rate of not less than $. . . . . . . . per month, *it being mutually understood* that all lumber being delivered by the party of the first part *shall be allowed to remain piled upon said premises for sixty (60) days if not sooner called for by the said party of the second part.*  It is however agreed that the whole quantity of lumber shall be shipped by the first day of . . . . . . . . . .,
19. . . . *The party of the second part agrees to pay to the party of the first part the balance of the contract price of the said lumber when the same shall have been received by the party of the second part or by its inspector at shipping point, free from all expense to the party of the second part. It is further agreed that if the party of the first part shall fail as the agent of the party of the second part, to draw, ship and forward the lumber, at the time and in the manner above provided, the party of the second part is authorized to procure the same to be done through other agencies and to deduct all the expense of every kind which shall attend such drawing, shipping and forwarding from the balance of the contract price,* the party of the first part shall on demand, pay the party of the second part such excess.   It is agreed that this contract cannot be assigned without the consent of both parties.

"In consideration of the prices to be paid for the aforesaid and the other valuable considerations the party of the second part *agrees to loan the party of the first part ($400.00) four hundred dollars* for which said party of the first part agrees to execute his note with interest at six per cent. from date of said loan.  *Out of the first money pay-*

*able under this contract by the parties of the second part
to the party of the first part, the said party of the second
part may retain in their hands at least $9.00 upon each
thousand feet of lumber, until the whole $400.00 and in-
terest has been repaid.*

"*The term 'shipping point' as used in this contract means
f. o. b. cars Honaker, Virginia.*

"Witness the following signatures and seals." (Italics
supplied.)

The leased land provided for in this contract was secured
upon a location on the top of Chestnut Ridge and was pro-
vided by Morgan, as stipulated in the contract.

Accordingly, Morgan proceeded to and did manufacture
a part of the quantity of lumber provided for in said con-
tract and delivered it from time to time on said leased land
by piling it thereon on sticks, as specified in the contract,
to there remain for a certain time, as also specified in the
contract, prior to its being hauled by Morgan to Honaker
where the lumber was to be inspected and recounted by
appellants, through their inspector, and loaded on board
cars for shipment per order of appellants, all as set forth
in the contract. As stipulated in the contract, the property
in or title to the lumber was to pass to the vendee upon the
delivery of it piled on sticks on said leased land, as pro-
vided in the contract, and the total purchase price was to
be fixed by the subsequent inspection and recount at Hon-
aker.

There was no other lumber of the vendor (Morgan), nor
of anyone else, on said leased land, except that placed there
by Morgan, as destined for appellant, as the subject of said
contract.

Pending these operations, appellants loaned or advanced
to Morgan the $400.00 which they obligated themselves to
advance by said contract, and also, subsequently and at dif-
ferent times, the additional sums of $200 and $383.65.

Subsequently, Morgan became involved in financial difficulties and on June 20, 1913, executed a deed of trust or deed of assignment to Shoemaker, trustee, for the benefit of creditors of Morgan. The conveying clause of this deed is the only portion of it pertinent to the issue before us, and such clause, so far as material, is set forth next below. By such deed Morgan conveyed to said trustee:

"All the remainder of the purchase price due to said party of the first part" (Morgan) "from Ellis and Myers Lumber Company" (the appellants) "for timber or lumber sold and delivered to said Ellis and Myers Lumber Company, as is shown by contract of the . . . . . . day of December, 1912, and of record in the clerk's office of the Circuit Court of Russell county, which said amount will be about $2,000.00." (And) "* * * All the lumber in possession of the said party of the first part, being ties and lumber not sold or delivered to anyone, being of the value of $500.00."

The advances or loans aforesaid by appellants to Morgan were made prior to such deed.

At the time such deed was made there was stored or piled on said leased land certain lumber which is in controversy in this cause.

Following such deed the said trustee (Shoemaker) at the outlay of considerable expense, had such lumber hauled from the leased land to Honaker, where it was inspected and recounted by appellants, through their inspector, and it, or so much of it as bore inspection, was thereupon loaded on board cars at Honaker by the trustee and shipped to appellants.

It does not appear that any communication passed between the trustee and appellant, before or while these transactions were taking place, as to the position of the trustee or appellants with respect to such lumber, touching whether the trustee was hauling and loading it on board cars as

62

aforesaid and appellants were inspecting, recounting and receiving shipment of it under the contract aforesaid; or informing the trustee that the appellants had made the advances or loans to Morgan; or whether the trustee was claiming that the lumber itself had been conveyed to him by said deed of assignment, and that he was making a new bargain and sale of it to and appellants were receiving it under such bargain and sale from the trustee. Nor was there any communication between the trustee and the inspector of appellants on this subject, the sole connection of the latter with the matter being to inspect and recount the lumber at Honaker, subsequently to several estimates of it by him made from time to time while it was on the leased land.

After the shipment of the lumber from Honaker, however, as aforesaid, it developed that appellants had made the advances or loans aforesaid to Morgan as aforesaid, which appellants insisted they had the right to set off against the purchase price of said lumber. The trustee, on the other hand, then took the position that the property in or title to said lumber did not pass to appellants under said contract until it was hauled to Honaker, inspected and delivered f. o. b. cars as aforesaid; that as this was not done prior to said deed of assignment, the lumber itself passed to the trustee under the provision of that deed which conveyed to the trustee, "* * * all the lumber in possession of the party of the first part, being * * * lumber not sold or delivered to anyone, being of the value of $500.00;" that he had sold and delivered the lumber to appellants who must pay him the whole purchase money therefor without the right to deduct as set off any advances or loans they may have made to Morgan.

The testimony of the trustee in the cause was to the effect that there was no agreement between him and appellants as to the price they should pay for the lumber, but he testi-

fied that he let them have it at the same prices as were fixed in said contract as those prices were as good as he could have obtained from others.

There was lumber belonging to Morgan (other than that in controversy in this cause) at the time of said deed of assignment which passed to the said trustee under that portion of the clause of conveyance last above quoted and of which the trustee took possession and sold, some to appellants and some to others.

Following said deed of assignment, certain creditors of Morgan, in two actions of assumpsit, had certain garnishee process served upon appellants, and, in their answer filed in such proceedings the appellants used the following language:

"* * * The said partnership bought of the said Morgan certain lumber to be cut and loaded at Honaker, Virginia, upon which the said partnership is not now to the said B. F. Morgan indebted in any sum of money, but which it may become within the next sixty days in a sum of about $200.00, but at this time this affiant is not able to make the said amount more definite; and this affiant is advised that since the making and entering into of the said contract of December 6, 1912, the business and effects of the said B. F. Morgan have gone into the hands of A. D. Shoemaker, receiver, and that at this date the said B. F. Morgan is indebted to the said partnership in the sum of $181.86, and that the said partnership has in its possession a certain amount of lumber, just how much it has not been able to ascertain, worth about $400.00, the costs of the loading of which lumber according to the terms of the said contract is to be paid out of the proceeds of the lumber itself, and not by the said partnership."

This cause is a suit by creditors of Morgan for the ascertainment of the assets conveyed by said deed of assignment; for the settlement of the accounts of said trustee; the ascer-

tainment of the true amount due and owing from appellants to such trustee; and the subjection of all of same to the satisfaction of the debts of such creditors in accordance with their respective liens and priorities.

Besides the questions above indicated, there was some controversy in the suit as to the amount of lumber received by appellants, being a small discrepancy, however, between their accounts rendered concerning the lumber and those rendered by the trustee.

The cause was referred to a commissioner who, after taking voluminous depositions, made his report in the cause in an alternate way—one statement being based on the alternative that the court should hold that the property in or title to the lumber aforesaid on the leased land *did* pass to the appellants prior to said deed of assignment, in which case the loans or advances aforesaid were allowed appellants by way of set-off, and a small balance of $150.98 was reported due to the trustee from appellants for lumber which was the subject of said contract, and $8.12 for lumber shipped to appellants by said trustee not covered by said contract, making a total of $159.10 due from appellants to said trustee, with interest thereon from October 17, 1913; the other statement being based on the alternative that the court should hold that the property in or title to such lumber *did not* so pass, in which event credit for said loan or advances were denied to appellants and a balance of $1,054.69, with interest from October 17, 1913, was reported due to the trustee from appellants.

The decree complained of adopted the second above mentioned alternative statement of the commissioner, and upon exceptions duly taken and filed to such report and assignments of error such decree is before us for review on appeal.

*Hall, Wingfield & Apperson* and *Kime & Kime,* for the appellant.

*W. W. Bird, G. B. Johnson* and *A. G. Lively,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions raised by the assignments of error will be considered and passed upon in their order as our conclusions are stated below.

1. The contract involved in this cause, when made, was an executory contract of sale of lumber conditionally—the lumber at the time of the contract not being in existence. The subject of the contract, therefore, was not specific at that time, and the conditions specified in the contract being unperformed, the contract with respect to all of its conditions was entirely executory.

Two things only were essential to convert this executory contract into a complete bargain and sale of the lumber, to the extent of passing the property in or title to the lumber to the vendees (the appellants), namely: (1) The lumber becoming specific—*i. e.,* its coming into existence and being segregated and set apart as the subject of the contract, as stipulated therein should occur as conditions precedent to the passing of the property, or title; and, (2) the performance of the other conditions precedent, if any, to the passing of the property or title, as stipulated in the contract.

(a) That the subject thereof must be specific is essential to the validity of every contract of bargain and sale. It inheres in the very nature of the transaction that a bargain and sale cannot be made of chattels not yet identified—the ownership cannot change, the property or title cannot pass, until the particular property which is the subject of the contract becomes ascertained. This is true independently of the intention of the vendor and vendee. So long as the subject of the contract remains undetermined,

the law will conclusively presume that the contract is exe-
cutory, and no property or title can pass from vendor to
vendee. Benj. on Sales (4 Am. Ed.), section 78, pages 95-6,
section 310, page 323. This, however, is the sole element in
such a contract which is independent of the intention of the
parties.

That is to say, when the subject of the contract is or has
become specific, then—

(b) Whether or not the property or title thereto passes
becomes wholly a matter of the mutual intention of the
parties, vendor and vendee—wholly a matter of contract
between them. In such case, neither delivery of the chattel ·
to the vendee, nor the completion of its manufacture, or
anything else to be done to it so that it may be ready for
such delivery, nor the measurement or testing of it (when
it is to be measured or tested in any way), nor anything
further to be done to ascertain the quality, or the quantity,
or the price; nor the payment of the purchase money, or
any part of it; is essential to the passing of the property
or title to the vendee, if the contract provides it shall so
pass at a stated time and when the chattel is in a condition
stated in the contract. The conditions stipulated in the
contract as to these matters are the sole conditions prece-
dent to the passing of the property or title, all other con-
ditions precedent being thereby waived;.the vendor being
bound by the contract to pass and the vendee to accept the
property and title thereto when such conditions have been
performed or exist—and hence the property or title then
passes to the vendee under the term of the contract. Benj.
on Sales, *supra,* sec. 309, p. 322, sec. 311, pp. 323-4, sec.
325, p. 333 section 324, p. 338, *et seq.,* p. 368 *et seq.;*
*United States* v. *Ansonia Brass, etc., Co.,* 218 U. S. 425,
31 Sup. Ct. 49, 54 L. Ed. 1107.

In the instant case, the lumber which was the subject of
the contract, after it came into existence, by being sawed,

was piled on sticks on the leased land on the top of Chestnut Ridge, as provided for in the contract—which was away from the mill and other lumber of the vendor—there being no other lumber, than that which was the subject of the contract, on such leased land; so that there was no confusion or intermingling of such lumber with other lumber; and no question arises in the instant case of the identity of the lumber—as to its being the specific lumber which was the subject of the contract.   We are thus relieved from any consideration of whether the lumber was of uniform quality and value, and other nice distinctions to which a sale of goods in mass gives rise, upon the question of ascertainment of whether the subject of the contract is specific.   The following cases bear on this subject, which are cited and relied upon for appellees, but which, therefore, have no controlling bearing upon the instant case, viz.: *New England Dressed Meat, etc., Co.* v. *Standard Worsted Co.,* 165 Mass. 328, 43 N. E. 112, 52 Am. St. Rep. 516; *Hubler* v. *Gaston,* 9 Or. 66, 42 Am. St. Rep. 794; *Elgee Cotton Cases,* 22 Wall. 120, 22 L. Ed. 863; *Groff* v. *Belche,* 62 Mo. 400.

In the instant case, the lumber in question was segregated, set apart, by delivery on the leased land as aforesaid. This was "in legal phase    *    *    the appropriation of specific goods to the contract.   The sole element deficient in a perfect sale    *    *" (was) "thus supplied.   Benj. on Sales, *supra,* sec. 488, p. 441.   And this was done, not under subsequent mutual agreement of the parties—which would have been sufficient to convert the prior executory contract into a complete bargain and sale (*Idem.* sec. 488)—but under the very terms of the contract in writing aforesaid. And with respect to the intention of the parties upon the subject of whether the property or title in the lumber should then pass to the vendee, or such passing should be suspended until some other condition or conditions prece-

dent should be performed or exist, the contract itself pro-
vides in express terms as follows: "*   *  Whereupon the
delivery of said lumber shall be deemed complete, and said
lumber shall thereupon become and thenceforth remain
the property of the second party" (the vendees) "abso-
lutely and unconditionally."

In the language of Benj. on Sales, *supra*, sec. 309, p. 322,
we must say: "The agreement is just what the parties
intend to make it, if that intention is clearly and unequivo-
cally manifested, *cadit questio.*" And language could
scarcely be more unequivocally manifest than that of the
contract in the instant case, above quoted, as expressing
the mutual intention of the parties thereto that the prop-
erty in and title to the lumber in question should pass ab-
solutely and unconditionally to the vendees when it was
delivered on said leased land as aforesaid. Consequently
it did so pass by the terms of the contract, unless there be
some other provision or provisions in the contract which
negative this conclusion.

(c)   It is urged for appellees upon our consideration
that the lumber contracted for was to be of various kinds
of timber, of various grades, of various sizes, and to be
merchantable under the rule of each grading; that, hence,
an inspection of the lumber by appellants, to ascertain
whether it came up to the contract specifications, or what
part of it did so, was essential to the ascertainment of
whether the lumber delivered on said leased land was
such lumber as was called for by and was the subject of the
contract; that the contract provided merely for an inspec-
tion and for an account and tally (or counting) by the
vendor as the lumber was delivered on the leased land and
did not provide for any inspection of the lumber by the
vendees before or when it was delivered on the leased land,
but only when a subsequent delivery of it should be made
to the vendees at Honaker (all of which facts are true);

that in fact there was no inspection of the lumber by the vendees until this later time (which fact is also true): and, hence it could not be and was not the intention of the parties that the property in and title to the lumber should pass to the vendees until the lumber was identified by inspectors.

(d)   It is also alike urged upon our attention that, in view of the facts aforesaid, (which are all unquestionably true), the amount of the purchase price for the lumber could not be ascertained and was not to be ascertained, indeed, or paid, in accordance with the contract, until after the lumber was subsequently inspected, *i. e.*, tested, measured, recounted and accepted by the vendees at Honaker, and subsequently delivered there f. o. b. cars; and that something more remained to be done to the lumber by the vendor after its delivery on the leased land, namely, he was bound by the contract to expend further time and money upon the hauling of the lumber to Honaker, and hence it could not have been and was not the intention of the parties, when the contract is construed as a whole in the light of such facts and circumstances of the case, that the property in or title to the lumber should pass, until these things were all done.

The position of appellees, referred to in paragraph (c) next above, amounts to this:   Under the contract, as per its provisions and as acted upon, the vendor may have delivered on the leased land some of the lumber there delivered, which did not comply with the contract specifications as to kind of timber, or grades, or sizes, or merchantable quality.   That since by the contract the vendees were to finally accept and pay for only such of the lumber as complied with the contract specifications, the fair and reasonable construction of the whole contract is that title to none of the lumber passed until it was inspected by the vendees at Honaker, and was thereafter loaded on board cars, the

63

provision of the contract next above quoted to the contrary notwithstanding. That position loses sight of the consideration that a complete bargain and sale of chattels may be made subject to a condition subsequent that the chattels shall conform to any stipulated specifications. In such case, the title to the chattels passes at the time of the bargain and sale, notwithstanding the fact that the sale is subject to be defeated in whole or in part by the failure of the chattels to fulfil the stipulated specifications, when such fact is subsequently ascertained. The bargain and sale in such case is a conditional one, to be sure; but the condition is a subsequent and not a precedent condition to the passing of the title, and in no way prevents the latter taking place.

With respect to the positions of appellees referred to in paragraph (d), next above, it is deemed sufficient to say that they all concern circumstances which may be important in cases where the contract is not express, or if express, is not plain and unequivocal as to the intention of the parties as to when the property or title shall pass. They are circumstances to which, in such cases, the courts apply certain rules of construction as furnishing tests for determining the intention of the contracting parties, but in such cases only. To such cases only are the famous rules, known as the rules of Lord Ellenborough, which are relied on by the appellants, applicable. Where the contract is express, plain and unequivocal, as aforesaid, as is true of the instant case, such circumstances are immaterial, and such rules of construction are inapplicable, since they do not have to be resorted to in order to ascertain the intention of the parties to the contract.| See authorities above cited.

In the instant cases all of the provisions of the contract relied on for appellees as conditions precedent to the passing of the property or title thereto, appear from the contract itself as conditions precedent only to the payment

in full of the purchase money, and not to the passing of the property or title thereto—a wholly different thing. The only conditions precedent to the passing of the property or title, is expressly provided in the contract, were those and those only which were to serve to segregate and identify the lumber—to appropriate it—as the subject of the contract, as aforesaid.

Hence, we are of opinion that the authorities cited and relied on for appellant, illustrating various applications of Lord Ellenborough's rules of construction, are inapplicable to the instant case. Such authorities, in addition to those next above referred to, are: *Dixon* v. *Myers*, 7 Gratt. (48 Va.) 240; 35 Cyc., p. 292; *Arbuckle* v. *Gates*, 95 Va. 802; *Thomas* v. *Hubbard*, 79 W. Va. 138, 90 S. E. 817; *Hahn* v. *Fredericks*, 30 Mich. 223, 18 Am. Rep. 119; 2 Schouler on Per. Property., sec. 250; 2 Benj. on Sales, sec. 3; *Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212, 18 Pac. 248, 9 Am. St. Rep. 199, 203; 2 Va. Law Reg. 58; and none of them concerns a contract which expressly provided in plain and unambiguous terms when the property or title in the chattels should pass to the vendee.

We are, therefore, of opinion that there is no merit in the positions taken by appellees above considered and that the assignments of error of appellants with respect thereto are well taken.

We come now to the sole remaining positions taken by appellees in defense of the assignments of error by appellants, which are, in effect, as follows:

2. That the appellants, by their recognition and acquiescence in the deed of assignment and the action of the trustee, Shoemaker, thereunder, in hauling the lumber from said leased land to Honaker, and loading it on board cars there and shipping it to appellants, recognized and acquiesced in the trustee's right to take over such lumber while on the yard on said leased land by his having it

hauled therefrom; and appellants having inspected such lumber when delivered to them by the trustee at Honaker and received shipment of it from Honaker by the trustee, are estopped to deny that they purchased the lumber from the trustee, and hence that appellants, if they ever had title (to the lumber under the contract aforesaid, are estopped from asserting such title, or any right or set-off against the purchase money for such lumber by reason of any advances or loans made by appellants to the original vendor (Morgan) of the lumber under said contract; and that the law, under such circumstances, will imply a contract of purchase by appellants of and a consequent implied promise of appellants to pay the trustee for such lumber.

Now, as appears from the provision of the deed of assignment quoted in the statement of the case above, such deed did not convey the lumber, or any part of it, to said trustee (Shoemaker), but only "all remainder of the purchase price due to . * * (the original vendor, Morgan) from * * (appellants) for timber or lumber sold and delivered to * * (appellants) as shown by contract of . . . . . . day of December, 1912," (being the contract aforesaid). There was, therefore, nothing in the deed of assignment in conflict with the rights of appellants as owners of the lumber under the contract aforesaid. On the contrary, the deed of assignment expressly recognized such rights. Hence, no estoppel, as against appellants, could grow out of their acquiescence in such deed.

In regard to the acquiescence of appellants in the action of the trustee in delivering the lumber at Honaker, by hauling it from the leased land thereto, thus incurring the expense of such hauling, and the inspection and acceptance by appellants of the lumber at Honaker, and the receiving of the shipments of it from Honaker by the trustee, there was nothing in all of this inconsistent with the provision of said contract. By the deed of assignment the remainder of the

purchase money for the lumber which would be due from appellants under said contract was conveyed to Shoemaker, the trustee. If the trustee had "failed to draw (haul), ship and forward the lumber" from the leased land to Honaker, then, by the express provisions of the contract, the appellants were "authorized to procure the same to be done through other agencies and to deduct all the expense of every kind which shall attend such drawing, shipping and forwarding from the balance of the contract price   *   *," in which event the amount the trustee would have realized from the "remainder" of purchase money aforesaid, conveyed to him as aforesaid, would have been to that extent reduced. Therefore, because of the conveyance to him by the deed of assignment, the trustee had the right to do what he did under the provisions of the contract itself, (he being in the shoes of his grantor, the original vendor party to such contract) ; hence such action was in no respect in violation of or hostile to the contract or to the rights of appellants thereunder. Therefore, the acquiescence of appellants in such action could not operate by estoppel to deprive them of any of their rights under such contract.

The same is true of the answers of the appellants filed in the two actions of assumpsit, quoted in the statement of the case above. Those answers recognized merely the obligation of appellants for whatever balance of indebtedness might be ascertained to be due from them upon a settlement of accounts under said contract. There was nothing in this inconsistent with their claim of title to the lumber itself under such contract or their right to charge their vendor, Morgan, with any advances or loans they may have made to him under such contract or otherwise.

And as to there being an implied contract of purchase by appellants of and a consequent implied promise of appellants to pay the trustee for the lumber, there being an express and an enforceable contract in existence which

governed the rights of the parties, the law will not imply a contract in contravention thereof. It is only in the absence of an express or of an enforceable contract between parties, that the law (whether at law or in equity) will, from circumstances, imply a contract between them. *Grice* v. *Todd*, 120 Va. 481, 91 S. E. 609, L. R. A. 1917 D, 512.

With respect to the loans or advances of $400 and $200 and $363.85, made by appellants to their vendor (Morgan), it is true that by the contract aforesaid itself, the appellants bound themselves to lend to Morgan only $400 as an advance upon the purchase money for the lumber. But there was nothing in this which forbade the appellants from subsequently also lending Morgan the further sums of $200 and $363.85. And having done so, prior to the deed of assignment made by Morgan, appellants would have had the equitable right to set off such $200 and $363.85, with interest thereon, aforesaid, against Morgan in any settlement of accounts with him thereafter involving the purchase money owing to him by appellants for the lumber; and Morgan having thereafter become insolvent and made the assignment aforesaid to the trustee, Shoemaker, appellants had and have, in a court of equity, the same right of set off against the trustee. *Feazle* v. *Dillard*, 5 Leigh (32 Va.) 31; *Barnes* v. *Barnes*, 106 Va. 519, 56 S. E. 172.

For the reasons above stated, we are, therefore, of opinion that there was error in the decree complained of, and it will be set aside and annulled, and this court proceeding to enter such decree as the court below should have entered, will decree that the appellees recover of the appellants the sum of $159.10, with interest thereon from October 17, 1913, until paid, $150.98 parcel thereof being all the remainder of the purchase price due and owing by appellants to said trustee for the lumber which was the subject of the contract aforesaid of December 6, 1912, and $8.12,

the residue thereof, being for eleven hundred and sixty feet of cull lumber shipped by said trustee to appellants and received by the latter, which was not the subject of said contract; and that the appellants recover of the appellees their costs in this behalf expended. And the cause will be remanded to the court below for such further proceedings therein as may be necessary or proper, not in conflict with the views expressed in this opinion.

*Reversed and remanded.*