Henry S. CRAM, Plaintiff,

v.

SUN INSURANCE OFFICE, LTD.,
Defendant.

Robert S. WAHAB, Jr., Defendant and
Third-Party Plaintiff,

v.

The HANOVER INSURANCE COM-
PANY, Third-Party Defendant.

Civ. A. No. 8573.

United States District Court
D. South Carolina,
Charleston Division.

June 3, 1966.

Ira J. Bloom, Pritchard, Myers & Morrison, Charleston, S. C., for plaintiff.

Henry B. Smythe, Buist, Buist, Smythe & Smythe, Charleston, S. C., for defendant and third-party plaintiff.

Ben Scott Whaley, Barnwell, Whaley, Stevenson & Patterson, Charleston, S. C., for defendant.

B. A. Moore, Moore, Mouzon & McGee, Charleston, S. C., for third-party defendant.

### ORDER

SIMONS, District Judge.

This is an action for a declaratory judgment brought by the plaintiff, Henry S. Cram, against Sun Insurance Office, Ltd., and Robert S. Wahab, Jr., defendants, to determine the rights, duties and liabilities of the parties under a contract of marine insurance issued by defendant Sun Insurance Office, Ltd., allegedly covering the yacht "Buck's Club" when it was totally destroyed by fire on December 5, 1964.

In his amended complaint plaintiff asks for a judgment decreeing: (1) That plaintiff has now paid defendant Wahab in full for the "Recess"; (2) That, if the court determines that title to the "Buck's Club" had passed to defendant Wahab at the time of its destruction as is contended by defendant Sun Insurance Office, the court should also find that defendant Wahab is indebted to plaintiff in the sum of $5,000.00; and (3) That the defendant Sun Insurance Office, Ltd., is obligated to pay plaintiff the agreed valuation of the "Buck's Club" in the amount of $12,200.00 under its policy of marine insurance.

Defendant Wahab in his amended answer alleged that he had negotiated with plaintiff in regard to plaintiff's purchasing his yacht, the "Recess", and generally aligned himself with plaintiff in claiming that at the time of the destruction of the "Buck's Club" by fire it still belonged to Cram and was covered by insurance in the amount of $12,200.00. He admitted that plaintiff has now paid him the sum of $5,000.00. By way of counterclaim in his answer he seeks judgment against plaintiff in the sum of $7,200.00, together with a lien for such amount on the proceeds of insurance due plaintiff by defendant, Sun Insurance Office, Ltd.

Defendant Sun Insurance Office, Ltd., in its amended answer admits issuing its policy of marine insurance covering the "Buck's Club" against the hazards set out, admits total destruction by fire of the "Buck's Club" but denies that it provided coverage at the time the "Buck's Club" was destroyed by fire, since plaintiff had transferred his interest therein to Wahab, without obtaining prior written consent to do so from the company, in violation of the policy provisions.

The depositions of Henry S. Cram and Robert S. Wahab, Jr., were taken during the course of the proceedings, and it developed that defendant Wahab had been in telephone communication with an agent of the Hanover Insurance Company regarding coverage for the "Buck's Club". Upon motion of defendant Wahab the court ordered Hanover Insurance Company into the action as a third party defendant.

In his third party complaint, defendant Wahab alleges that the third party defendant Hanover had agreed that it would cover the yacht "Buck's Club" with a marine policy when and if "he" defendant Wahab took title to it. He further alleges that he never took title to said yacht;

but that in the event the court should decide that such title had passed from plaintiff Cram to him prior to its destruction and that he is indebted to said plaintiff for $5,000.00, as prayed in his amended complaint, then Wahab would be entitled to recover from third party defendant Hanover any sums found due by him to plaintiff.

In its answer third party defendant Hanover alleges on information and belief that title to the yacht "Buck's Club" had not passed from plaintiff to defendant Robert S. Wahab, Jr., prior to its loss and destruction and further denies that it was an insurer of the yacht or in any wise liable by reason of its loss and destruction. Cross-motions for summary judgment by plaintiff against defendant Sun Insurance Office, Ltd., and by said defendant against plaintiff are now before the court on written briefs and arguments of counsel for both parties.

The paramount issue to be determined by the court in consideration of these cross-motions is whether title to the yacht "Buck's Club" had passed to defendant Wahab at the time of its loss and destruction on December 5, 1964, so as to void said policy over the boat issued by defendant Sun Insurance Office, Ltd.

It has been stipulated by counsel that should the court grant plaintiff's motion for summary judgment all issues in this cause would be resolved thereby, since plaintiff and defendant Wahab have amicably settled their differences if plaintiff prevails in its motion. However, should the court grant defendant Sun's motion for summary judgment against plaintiff, thereby dismissing the action against it, the liability of the third party defendant, The Hanover Insurance Company, to defendant third party plaintiff Wahab would remain unresolved, as that issue is not before the court. Neither is the liability of Wahab to refund plaintiff's $5,000.00 under an adverse ruling as to plaintiff's motion for summary judgment against defendant Sun before the court at this time.

After a careful consideration of the entire record herein, including the pleadings of all parties, depositions of seven witnesses, answers to interrogatories, and the able arguments of counsel for the parties, the court makes its findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Defendant Sun Insurance Office, Ltd., on June 18, 1964 issued to plaintiff its insurance policy with an agreed valuation of $12,200.00 insurance insuring his yacht the "Buck's Club" against the perils named therein, including destruction by fire and explosion; the term of the policy to be for a period of one year from that date, and the premium on said policy had been paid in full.

2. Under the terms of the policy an exclusion provision provides as follows:

This insurance shall be void in case this Policy or the property insured thereby shall be sold, assigned, transferred or pledged without previous consent in writing of the Company.

3. While said policy was in full force and effect plaintiff Cram negotiated with defendant Wahab for the purchase of the latter's yacht the "Recess". Wahab had been advertising this yacht for sale, and a mutual friend of the parties, a Captain Hester, got in touch with Cram who contacted Wahab arranging to meet him in Norfolk, Virginia on November 24, 1964 after Wahab had offered to sell his yacht for $24,500. As a result of this meeting an agreement was reached between them whereby Wahab agreed to take $19,500.00 in cash, with a trade-in allowance of the "Buck's Club" when in operating condition for the balance, since at that time Cram was having work done on the engines of the "Buck's Club" in Beaufort County, South Carolina.

4. Pursuant thereto the agreement was reduced to writing and all prior negotiations merged therein, as appears, from the two documents next set out, one executed by Wahab and the other by Cram, both done at Norfolk, Virginia, on November 24th, 1964:

For and in consideration of $1.00 and other good and valuable consideration I hereby bargain, grant, sell, and

convey all my right, title, and interest in one forty-one foot boat, now known as the "Recess" and documented in the U. S. Customs House as No. 295136.

I warrant that this boat is free of all liens and encumbrances of all kinds.

Given under my hand this twenty-fourth day of November, 1964.

.s/ Robert S. Wahab, Jr.
957 Bobolink Drive
Virginia Beach, Va.

In part consideration of the sale to me of Documented Vessel No. 295136, I agree to assign all of my right, title, and interest in one 1962 Clayton 28 ft. Sea Skiff, now known as "Buck's Club" to Robert S. Wahab, Jr.

I warrant that the said boat is free of all liens and encumbrances of all kinds and *will be in operating condition when delivered.* (Emphasis added.)

Given under my hand this 24th day of November, 1964.

s/ Henry S. Cram.

5. After the papers were signed Cram insured the "Recess" for its sale price of $24,500.00 and took her back to Beaufort County. In the meantime, Wahab arranged with third party defendant, The Hanover Insurance Company, for a binder to be placed on the "Buck's Club" at such time as he acquired title to it. At that time it was contemplated that Wahab would fly to Bluffton, South Carolina in the near future, pick up the "Buck's Club", and take her back to Norfolk. However, due to a change in the weather it became impractical for him to make this trip. Wahab through Cram arranged for Captain Hester, who had brought the parties together in the first instance, to transport the said boat to Norfolk at Wahab's expense. In pursuance of such arrangement, Captain Hester and his friend James Dunbar took charge of the vessel on December 5, 1964 at Hilton Head, South Carolina, where it was turned over to them by Cram in good operating condition. Captain Hester was acting as an employee of Wahab in transporting the boat to Norfolk at his request and expense. Nevertheless, there is no evidence in the record that defendant Wahab had authorized Captain Hester to inspect and finally accept delivery of the boat on his behalf.

6. When Cram negotiated the agreement with Wahab on November 24, 1964, he was ignorant of the clause in his policy voiding the insurance if the property were sold, transferred or assigned without the company's written consent.

7. On the trip to Norfolk, the "Buck's Club" caught fire and was totally destroyed near Beaufort, South Carolina on December 5, 1964.

8. At no time did plaintiff Cram notify his insurance agent, Middleton, Ingle and Company, or defendant Sun Insurance Office, Ltd., or any agent of either that he had sold, assigned, transferred or pledged the vessel "Buck's Club", and no consent in writing to any such sale, assignment, transfer or pledge was given by defendant Sun Insurance Office, Ltd.

## CONCLUSIONS OF LAW

The court has jurisdiction of the parties and the subject matter of this action. Inasmuch as the sales agreement between plaintiff and defendant Wahab was negotiated and executed in the State of Virginia, the laws of that State are applicable thereto.

The issue before the court on both of these motions is the legal effect of the transaction between plaintiff and defendant Wahab on November 24, 1964. Was the purported sale of Cram's "Buck's Club" to Wahab an executed contract of sale with a condition subsequent to be performed by Cram as seller, or merely an executory contract or offer to sell with certain conditions precedent to be fulfilled before the contract would become executed and final? Stated another way, did title to the "Buck's Club" pass from Cram to Wahab prior to its destruction by fire?[1] If title did not pass, then de-

---

1. Geoghegan Sons & Co. v. Arbuckle Bros., 139 Va. 92, 123 S.E. 387, 393, 36 A.L.R. 399 (1924), " * * * [C]ounsel on both sides very properly confined their argu-

fendant Sun's marine policy effectively covered the boat's loss on December 5, 1964; if it did pass, then the policy was voided by virtue of its terms and conditions, inasmuch as it is agreed that Cram gave no notice to the company before the loss of his sale to Wahab and received no requisite consent in writing therefor from the insurer.

Virginia follows the general rule that whether or not title to personalty has passed to buyer depends primarily upon the matter of the mutual intention of the seller and buyer, the matter of contract between them; and in determining the question of such intention the court should properly consider the language and terms of the contract, and all other facts and circumstances relevant thereto. Ellis & Myers Lumber Co. v. Hubbard, 123 Va. 481, 96 S.E. 754 (1918); F. D. Cummer & Son Co. v. R. M. Hudson Co., 141 Va. 271, 127 S.E. 171 (1925); Triplett Lumber Co. v. Purcell, 185 F.2d 843 (4th Cir. 1950). See 77 C.J.S. Sales § 246 (1952). See also 77 C.J.S. Sales § 78, at pp. 760–761 (1952) where it is stated:

> Whether there is, on the one hand, a sale or an executed contract or, on the other hand, a mere agreement to sell or an executory contract, depends on the intention of the parties, as gathered from the language of the contract, whether written or oral, the conduct of the parties, the situation of the subject matter, the surrounding circumstances, and a just and fair construction of all the pleadings and a consideration of all the evidence in the case. * * *

> While, standing alone, such words in a contract as "sells," "sold," "buys," or "purchased" would import an executed contract, and the words "agrees to sell" would import an executory contract, nevertheless such words are not conclusive; they must be construed in connection with all the other provisions of the contract and in accordance with

what appears to have been the real intention of the parties.

After a careful consideration of the deposition testimony of both Cram and Wahab, their two written agreements set forth verbatim in Finding of Fact No. 4 hereinabove, their acts subsequent to the written agreements, and all the facts and circumstances as demonstrated by the record herein, I have concluded that it was the clear intention of Cram and Wahab that said sales agreement entered into by them on November 24, 1964 in reference to Cram's yacht "Buck's Club" be and constitute an executed and completed contract of sale, with only a condition subsequent to be performed by seller Cram in placing the boat "in operating condition when delivered" by him to buyer Wahab.

On the contract date, November 24, 1964, buyer had paid seller full consideration for the "Buck's Club" by accepting it as a trade-in allowance on the sales price by him to Cram of his yacht "Recess"; Wahab had delivered possession of the "Recess" to Cram, and had subsequently issued a bill of sale thereto. On Cram's part, as of that same date, he warranted that the "Buck's Club" *"is* free of all liens and encumbrances" (emphasis added) and agreed to place it in operating condition without delay.

Subsequently, Wahab who had agreed to pick up the "Buck's Club" in South Carolina when Cram had it in proper condition telephoned Cram several times urging that he get the boat in order so that he (Wahab) could get possession of it as he wanted to do some fishing. After Cram had placed the boat "in good operating condition" it was agreed between them that Wahab would not come to Hilton Head, South Carolina to pick it up in person because of the inclement weather. Instead Wahab arranged for Captain Hester to deliver the boat to him in Virginia at Wahab's expense.

ment to the question whether or not title passed to the buyer, for, if it did, under the circumstances of the case, the general

doctrine applied that loss follows the title —'Res perit domino.'"

It is obvious that both Cram and Wahab had complete confidence in each other from the time of their first meeting, and when Cram represented that the boat was ready for delivery to Wahab, the latter without further ado employed Captain Hester to transport it to Virginia at some considerable expense to him. Cram had no further obligation to Wahab than to put the boat in operating condition. It was then the buyer's responsibility to obtain delivery of the boat. All of the circumstances of this case clearly negative the present position of Cram and Wahab that their intention and agreement merely constituted an executory contract or an agreement to buy and sell the "Buck's Club." Whether a potential windfall of $7200.00 at the expense of defendant Sun Insurance Office, Ltd., has been a lure to the present litigation or whether the parties validly wish to ascertain their position, it should be noted, has not been considered by the court since it is clear that title had passed, and the court need go no further into this other matter.

My reasoning and conclusions in this area have been bolstered by the case of Ellis & Myers Lumber Co. v. Hubbard, supra. That case involved the question as to whether title to certain lumber had passed from seller to buyer as of a certain time. In disposing of this question, the Supreme Court of Appeals of Virginia stated at 96 S.E. pp. 758–759:

> The position of appellees, referred to in paragraph (c) next above, amounts to this: Under the contract, as per its provisions and as acted upon, the vendor may have delivered on the leased land some of the lumber there delivered, which did not comply with the contract specifications as to kind of timber, or grades, or sizes, or merchantable quality; that since, by the contract, the vendees were to finally accept and pay for only such of the lumber as complied with the contract specifications, the fair and reasonable construction of the whole contract is that title to none of the lumber passed until it was inspected by the vendees

at Honaker, and was thereafter loaded on board cars, the provision of the contract next above quoted to the contrary notwithstanding. *That position loses sight of the consideration that a complete bargain and sale of chattels may be made subject to a condition subsequent that the chattels shall conform to any stipulated specifications.* (Emphasis added.) In such case, the title to the chattels passes at the time of the bargain and sale, notwithstanding the fact that the sale is subject to be defeated in whole or in part by the failure of the chattels to fulfill the stipulated specifications, when such fact is subsequently ascertained. The bargain and sale in such case is a conditional one, to be sure; but the condition is a subsequent and not a precedent condition to the passing of the title, and in no way prevents the latter taking place.

Even if the contract were considered to be merely executory, and title had not passed to Wahab from Cram on the contract date, in compliance with his agreement the latter had placed the boat in good operating condition, had surrendered all dominion and control over it on December 5, 1964 to buyer's agent, Captain Hester, whose possession was that of Wahab. Thus Cram had "delivered" the boat in operating condition to the buyer's agent; he had completed all of his duties and obligations to buyer, and he had received the sales price in full. Under such circumstance the contract would have then become executed and complete; he had then "sold, assigned, transferred or pledged (the insured boat) without previous consent in writing of the company" in violation of a valid and enforceable provision of plaintiff's marine policy from defendant Sun. This was prior to the loss, and was sufficient to void the coverage of said policy.

In accordance with the foregoing plaintiff's motion for summary judgment against defendant Sun Insurance Office, Ltd., is dismissed; and the motion for summary judgment of defendant, Sun

708

Insurance Office, Ltd., against plaintiff is granted, with costs to the prevailing party.

And it is so ordered.

Let judgment be entered accordingly.